## UNITED STATES DISTRICT COURT
## OF THE DISTRICT OF COLUMBIA

_____

Oakwood Healthcare, Inc.,                            )
                                                     )
                   Petitioner,                       )
                                                     )
          v.                                         )   Case No. 1:07-mc-0458-HHK
                                                     )
                                                     )
Service Employees International Union,               )
                                                     )
                   Respondent.                       )
_____)

## MEMORANDUM BY THE SERVICE EMPLOYEES INTERNATIONAL UNION IN OPPOSITION TO MOTION TO COMPEL

### INTRODUCTION

This motion to compel arises in the context of a lawsuit brought by two registered nurses on their own behalf and on behalf of a proposed class of similarly-situated nurses alleging that they have been the victims of a conspiracy among Detroit hospitals to depress their wages in violation of the federal antitrust laws. *See Cason-Merendo v. Detroit Medical Center*, 2:06-cv-15601 (E.D. Mich.). The *Cason-Merendo* lawsuit is one of five companion lawsuits brought by registered nurses against various hospital corporations in Albany, Memphis, San Antonio, and Chicago.[1]

At issue here is the subpoena served by Oakwood Healthcare, Inc. ("Oakwood") – a Defendant in the Detroit lawsuit – for documents from the Service Employees International

_____

[1] *See Unger v. Albany Med. Ctr.*, No. 06-CV-0765 (N.D.N.Y.); *Reed v. Advocate Healthcare*, No. 1:06-cv-3337 (N.D. Ill.); *Clarke v. Baptist Mem'l Healthcare Corp.*, No. 2:06-cv-02377 (W.D. Tenn.); *Maderazo et al. v. VHS San Antonio Partners, L.P., et al.*, Civ. A. No. SA06CA0535 (W.D. Tex.).

Union ("SEIU" or "the union"),[2] which is *not* a party in any of the five antitrust cases.  While

SEIU is not a party, there is no dispute that the union has had a role in the genesis of these

lawsuits and in providing a measure of financial support to the plaintiffs in these cases.  In

particular, SEIU (i) participated in the initial investigation of facts that triggered the steps by

plaintiffs' counsel that culminated in the filing of these five lawsuits and (ii) has provided, and

continues to provide, financial assistance to one of the numerous law firms representing the

plaintiffs in these lawsuits.  Oakwood contends that it is entitled to engage in discovery of SEIU

to establish the union's motivations for its involvement in the lawsuit.  According to Oakwood,

SEIU's involvement is not consistent with the interests of the class members but is instead

designed to achieve an "ulterior motive," which Oakwood defines as "using costly litigation . . .

to exhaust employers resisting unionization" so that the employers will enter into agreements

with SEIU.  *See* Oakwood Mem. In Support of Mot. to Compel at 9 (d/e 1).  Oakwood argues

that the Named Plaintiffs and their counsel, who, Oakwood contends, have a "clear affiliation

with the SEIU," *see id.* at 3, will seek to achieve SEIU's goals over those of the class.

Accordingly, they are not adequate representatives of the class, as required by Fed. R. Civ. P. 23.

As we explain in detail below, pursuant to other subpoenas served on the SEIU in this

case (and in the other antitrust cases) from other defendants, SEIU has already responded (and

continues to respond) to discovery to assess whether the Named Plaintiffs and their counsel can

adequately represent the class.  In particular, SEIU has provided discovery on its relationship

with the Named Plaintiffs and with Plaintiffs' counsel on what Oakwood refers to as the "pre-

litigation support" of the lawsuits, on financial support provided to a law firm representing

---

[2] The SEIU is a 1.8 million member international labor union that has hundreds of affiliated local unions throughout the United States and parts of Canada.  Detailed public information about the SEIU, including a copy of its Constitution and Bylaws, can be found at www.seiu.org.

Plaintiffs, and on the role, if any, that these lawsuits play in any effort by SEIU to organize the employees of the defendants in these actions.

The discovery just described is targeted at SEIU's activities in connection with this underlying lawsuit, the defendants in this lawsuit, the Detroit market, and, in particular, the Named Plaintiffs and their counsel in this lawsuit. That evidence will show whether anything that SEIU has done will compromise the ability of the Named Plaintiffs or their counsel to serve as class representatives. Notwithstanding that reality, Oakwood, purportedly to show that the Named Plaintiffs and their counsel are not adequate class representatives in the lawsuit, has served SEIU with a subpoena that seeks documents related to other markets, other employers, and other lawsuits. Specifically, Oakwood's subpoena demands production of all "class action[s] and/or collective action[s]" where SEIU "has, or had, a funding relationship with any of the named plaintiffs' counsel relating to legal fees, costs and/or expenses." With respect to each of the defendants in any of those complaints, the subpoena seeks all documents related to "any agreement" recognizing SEIU or a "labor organization engaged in a joint organizing campaign with the SEIU" as the collective bargaining representative of the employees of that defendant, any "attempt, effort and/or plan" to become the collective bargaining representative of the employees of that defendant, and "any communication between the SEIU and any defendant [in those other class actions or collective actions]. . . relating to any prospective or possible agreement that might lead to the recognition of the SEIU" as the collective bargaining representative of the employees of that defendant. *See* Oakwood Subpoena (attached as exhibit 1 to Oakwood Motion to Compel).

SEIU objected to the subpoena, arguing (as we detail below) that the documents sought are not relevant to whether or not the Named Plaintiffs and class counsel are adequate class representatives. *See* Letter from R. Weinberg and M. Clash-Drexler to H. O'Leary (Oct. 16,

2007) (attached as exhibit 2 to Oakwood Motion to Compel).  Oakwood's motion to compel followed.

## ARGUMENT

In its motion to compel, Oakwood argues that it is entitled to "broad discovery" because *SEIU's motivation* for taking the actions described above is "relevant to class certification, and specifically . . . the adequacy of counsel [and] . . . whether a conflict exists between the interest of Plaintiffs and absent class members."  Oakwood Mem. at 2.  As we now show, Oakwood's argument does not provide any basis to support the "broad discovery" sought by its subpoena.

1.      Oakwood's argument fails first and foremost because, to the extent that Oakwood contends that it needs discovery in order to determine whether SEIU is using *this lawsuit* to organize the Defendants' workers or to pressure the Defendants to enter into any agreements with SEIU, discovery from other subpoenas served on SEIU in this lawsuit by Oakwood's co-defendant, St. John Health, covered that precise issue.  Specifically, on June 1, 2006, Oakwood's co-defendant served a subpoena duces tecum that sought, among other things, all documents related to this "Lawsuit and . . . any plan, proposal or action to organize the employees of any of the hospital defendants and/or obtain certification of the SEIU as the collective bargaining representative of any unit of any such Hospital Defendant's employees."  *See* Subpoena Duces Tecum at Request 17 (attached as exhibit 2); *see also id.* at Request 28 (seeking the production of all documents related to the "actual or potential effect of this lawsuit on the SEIU and/or its efforts to organize registered nurses").  In addition to the subpoena for documents, the Defendants in the Detroit action have also served SEIU with a Rule 30(b)(6) deposition subpoena, requiring testimony by SEIU on those same topics.  *See* Subpoena for Rule 30(b)(6) Deposition (attached as exhibit 3).  In response to those subpoenas, SEIU has produced thousands of pages of documents and has sat for three full days of deposition testimony through

its Rule 30(b)(6) designees and has agreed to a fourth day, which will occur on December 20, 2007.[3]

In short, the discovery from these other subpoenas covers exactly the issue that Oakwood now wants to explore. Thus, for example, Oakwood makes much of the fact that SEIU Local 79 sought to organize nurses at one of Oakwood's facilities in 2001 and 2002. Irrespective of the fact that SEIU Local 79 is a separate and fully autonomous entity from the SEIU,[4] to the extent that there are documents showing that SEIU is using the antitrust lawsuits, in Oakwood's terms, "as a tactical weapon in a broader arsenal to press/persuade [Oakwood] to 'partner' or enter into a 'strategic alliance' with the union," *see* Oakwood Mem. at 2, those documents have already been requested and, if they existed – which they do not – would have been produced.

2.     What is more, SEIU's motivation for its involvement in this lawsuit is of no moment, because even if those documents showed that SEIU was using this litigation in order to organize the nurses employed by the hospital defendants in this lawsuit – which they do not – the question would still remain whether that motivation affects the independence of the Named Plaintiffs and their counsel – the only question at issue in assessing whether they can adequately represent the putative class.

Thus, the discovery against SEIU that would be proper in this case is discovery that makes it possible to assess whether the Named Plaintiffs and their lawyers can act independently of the union. And, as with the documents related to SEIU's motivation, other subpoenas already

---

[3] The Defendants have also subpoenaed current and former SEIU employees for deposition. *See* Subpoena for Deposition of Elizabeth Buchanan; Subpoena for Deposition of David DeRosa; Subpoena for Deposition of Michael Kapsa (attached collectively as exhibit 4).

[4] *Shimman v. Frank*, 625 F.2d 80, 97 (6th Cir. 1980) (holding that "[t]hroughout its opinion, the district court referred to [the local and international] unions as if though they were one and the same. They are not.").

served on SEIU by Oakwood's co-defendant have requested those very documents. In particular, the June 1, 2006 subpoena demanded production of:

- All documents concerning the Named Plaintiffs, including communications between the SEIU and any Named Plaintiff and any contract or agreement between SEIU and any Named Plaintiff (Subpoena Request 1, 10);
- All documents concerning the wages and compensation of nurses in the Detroit market (Subpoena Request 1);
- All documents related to the identification of nurses willing to serve as plaintiffs in this action (Subpoena Request 5);[5] and
- Any contracts or agreements between SEIU and counsel for the Named Plaintiffs relating to the payment of attorneys' fees or litigation costs for any Named Plaintiff (Subpoena Request 8).

*See* Subpoena (attached as exhibit 2); *see also* Subpoena for Rule 30(b)(6) deposition (attached as exhibit 3). As a result, the Defendants in this action have already sought – and SEIU has produced or will produce – discovery regarding the relationship between the Named Plaintiffs, their counsel and the SEIU, and discovery regarding what Oakwood describes in its motion to compel as the "[p]re-litigation support of the Nurse Wage Antitrust Class Actions." Oakwood Mem. at 3-5. It is the discovery from those subject matters that will lead to evidence regarding whether the Named Plaintiffs and their attorneys are "subject to extraneous influences that would create a conflict" with the interests of the class. *Id.* at 9.

3.      Indeed, that is precisely what the court in the related Albany case held when this very issue was raised in a motion to compel filed by the hospital defendants in that case. There, the defendants served a subpoena on SEIU and an SEIU local union seeking, among other things, documents showing the motivation of the SEIU and the local union for their involvement in the lawsuits. Both unions objected to the subpoenas, and the defendants filed a motion to compel. In the hearing on that motion, defense counsel – who also represents Defendant St. John Health in the Detroit action – raised precisely the same arguments that Oakwood now raises in its

---

[5] While SEIU has produced all documents related to the Named Plaintiffs, SEIU has objected to producing documents that identify nurses who chose not to serve as plaintiffs in this action.

motion to compel, namely that it was entitled to discovery regarding "to what extent . . . SEIU [is] driving this case." *See* Transcript at 10, *Unger v. Albany Med. Ctr.*, No. 06-CV-0765 (N.D.N.Y.) (Jan. 23, 2007) (attached as exhibit 1). As with Oakwood, defense counsel in Albany argued that because the SEIU had a funding relationship with one of the plaintiffs' law firms – the law firm of James & Hoffman – and was involved in investigating facts that led to the filing of this lawsuit, the discovery was necessary to show that the "class representative is a pawn for the SEIU." *Id.* at 11, 15-16.

The Albany court squarely rejected the defendant's arguments, holding that while discovery into the motivations of the "particular *individual Plaintiffs* may be relevant" in determining whether they and their counsel are adequate representatives, "[d]iscovery regarding the *union's* purposes generally is not." *Id.* at 21 (emphasis added); *see also id.* at 30 ("[T]he relevancy of the Union's involvement in bringing this law suit [to] class certification is non-existent."). Put simply, "impure thoughts on behalf of non parties" are "irrelevant" to the adequacy determination. *Id.* at 32. Oakwood's motion to compel, which advances precisely the same arguments made in the Albany matter, should be similarly denied.[6]

4.      The cases upon which Oakwood chiefly relies adopt precisely the same approach as the Albany court. *See* Def. Mem. at 9 (citing *Martinez v. Barasch*, No. 01-2289, 2004 WL 1367445, at *4 (S.D.N.Y. June 16, 2004) and *Kamean v. Local 363*, 109 F.R.D. 391, 399 (S.D.N.Y. 1986)). *Kamean*, for example, involved a lawsuit brought by current and former members of a labor union to recover unpaid wages allegedly owed to them in connection with work on certain projects. The named plaintiffs were "former members" of the union, but, at the

---

[6] To the extent that Oakwood may argue in its reply brief that the Albany decision should not control because the court in that case bifurcated discovery between issues related to class certification and those related to the merits, that argument is without merit. Oakwood's motion to compel makes clear that the only justification for the discovery sought by the subpoena is to support its opposition to the motion for class certification.

time of the lawsuit, belonged to a "rival union." *Kamean*, 109 F.R.D. at 395. In order to assess whether their membership in the rival union created a conflict with the other class members, the court focused not on whether the rival union has used litigation to gain an edge on other competing unions but instead on whether the specific relationship between the two unions would have any impact on the independence of the Named Plaintiffs. The court found that there was a "recent history of antagonism . . . and competition," *see id.*, and, therefore, that the named plaintiffs did not satisfy the adequacy requirement because there was an incentive on the part of those plaintiffs to "dismember [the defendant union] and divide it from its affiliated contractors" in order to benefit the rival union. *Id.*; *see also Martinez*, 2004 WL 1367445, at *5-*6 (focusing on competition between the two unions as basis for finding that named Plaintiffs' association with rival union "renders them antagonistic to the other members of the class").

That rationale applied here compels the denial of Oakwood's motion to compel. As in *Martinez* and *Kamean*, the focus of any inquiry regarding the adequacy of representation must focus on whether SEIU's conduct taints the independence of the Named Plaintiffs and their lawyers *in this lawsuit*. In that regard, the subpoena served on SEIU by the Advocate Health Care Network ("Advocate"), one of the Defendants in the related Chicago lawsuit, is particularly instructive. Notwithstanding the fact that, as Advocate stated in its Quarterly Report, SEIU "asked Advocate management to sign a neutrality agreement" and then allegedly "launched a corporate campaign" against Advocate because of its refusal to sign the agreement,[7] Advocate has not requested – as Oakwood has done – that SEIU produce all documents related to any efforts by the union to use litigation as part of a strategy to obtain a neutrality or recognition agreement against any employer or even all steps that SEIU took as part of its alleged campaign against Advocate. Instead, Advocate, consistent with the cases cited by Oakwood, limited its

---

[7] *See* Quarterly Report of Advocate Health Care Network at 13 (attached as exhibit 7).

8

subpoena to documents describing "(i) the [Chicago] Lawsuit **and** (ii) any plan, proposal or action to organize the employees" of any of the Defendants in that action. *See* Letter from E. Feldman to R. Weinberg, A. Roth, M. Clash-Drexler at 8-9 (Feb. 2, 2007) (emphasis in original) (attached as exhibit 8). The same approach is warranted here. Because the Defendants in this matter have already served discovery on SEIU seeking that very information, the motion to compel should be denied.[8]

In sum, the documents that are relevant to the issues at the heart of Oakwood's anticipated opposition to the plaintiffs' motion for class certification are those that address the SEIU's involvement in *this lawsuit*, the SEIU's relationship with the Named Plaintiffs, and any

---

[8] While the approach adopted by the *Martinez* and *Kamean* courts to assess the adequacy of representation is consistent with the approach set forth by the court in the related Albany case, we would be remiss if we did not briefly discuss two critical facts that distinguish the instant case from the conclusion reached by those courts that the class representatives did not meet the adequate representation requirement. First, Oakwood bases its motion on the fact that the "SEIU was responsible for finding potential plaintiffs for the cases." Oakwood Mem. at 6. Accordingly, relying on *Kamean* and *Martinez*, Oakwood suggests that the Named Plaintiffs here, having been recruited by the union, will be "pawns" for the union. *See, e.g., Martinez*, 2004 WL 1367445, at *5. Oakwood fails to inform the Court, though, that, while there is no dispute that SEIU was asked by plaintiffs' counsel to and did seek to refer nurses to counsel who were interested in getting more information about the potential lawsuit, the interrogatories from the Named Plaintiffs themselves make clear that – in contrast to the plaintiffs in *Martinez* and *Kamean* – their decision to become plaintiffs was not because of any contact from the union. *See* Pls. Resp. to St. John Health's Second Set of Interrogatories at 2-3.

Moreover, Oakwood also argues, again relying on *Martinez* and *Kamean*, that, because of James & Hoffman's alleged "clear affiliation with the SEIU" through its funding relationship, *see id.* at 3, all of the plaintiffs' lawyers will "give greater consideration to [the union's interests] than to the [interests of the] class." *Martinez v. Barasch*, No. 01-2289, 2004 WL 1367445, at *6 (S.D.N.Y. June 16, 2004). Oakwood's description of the facts and the conclusions it draws from those facts is unpersuasive. Significantly, this is not the case where the third-party payor (SEIU) is providing the sole support for the litigation. James & Hoffman is only *one of seven* different law firms that represent the plaintiffs in the Detroit action. *See, e.g.,* Pls. Withdrawal of Mot. to Strike at 2-3 (filed in *Cason-Merendo v. Detroit Medical Center*, 2:06-15601 (E.D. Mich.)) (attached as exhibit 6). Oakwood does not contend – and nor could it – that SEIU is providing any support to the other law firms, and Oakwood has not argued that any of those firms has a "clear affiliation with the SEIU." In such a situation, courts have held that the "addition of new and impartial counsel can cure" any existing conflict of interest. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

efforts by the SEIU to use *this lawsuit* as part of its efforts to organize nurses at any of the

Defendants' facilities.  Oakwood, however, seeks documents related to SEIU's conduct in

markets other than Detroit, involving other types of litigation, and involving employers other

than the Defendants.  That discovery is not designed to lead to the discovery of evidence

regarding whether SEIU's agreement to provide financial assistance for one of the plaintiffs' law

firms is part of an alleged "ulterior motive" to organize nurses at the Defendants' hospitals, much

less to evidence relating to the adequacy of the putative class representatives or their counsel.

For those reasons, the motion to compel should be denied.

## CONCLUSION

For the reasons set forth above, SEIU respectfully requests that the Court deny the

motion to compel.

Respectfully submitted,


_____/s/_____
Robert Weinberg (DC 085530)
Matthew Clash-Drexler (DC 477334)
Bredhoff & Kaiser, P.L.L.C.
805 15th Street, NW
Suite 1000
Washington, DC   20005
202-842-2600
202-842-1888 (fax)

# UNITED STATES DISTRICT COURT
# OF THE DISTRICT OF COLUMBIA

_____

Oakwood Healthcare, Inc.,                          )
                                                   )
               Petitioner,                )
                                                   )
      v.                                    )          Case No. 1:07-mc-
                                                   )          00458-HHK
                                                   )
Service Employees International Union,             )
                                                   )
               Respondent.                )
_____)

## PROPOSED ORDER DENYING OAKWOOD HEALTHCARE, INC.'S
## MOTION TO COMPEL

      The matter is before the Court on the motion by Oakwood Healthcare, Inc. ("Oakwood")

to compel production of documents in compliance with Rule 45(c) of the Federal Rules of Civil

Procedure.

      For good cause shown,

      It is **ORDERED** that the motion to compel is **DENIED**.


Dated: _____

                                     _____
                                     Hon. Alan Kay
                                     UNITED STATES MAGISTRATE JUDGE

# Exhibit 1

```
 1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF NEW YORK
 2
    --------------------------------
 3  MARJORY UNGER, on behalf of        Docket No. 06-CV-00765-TJM-DRH
    herself and all others
 4  situated,                          Albany, New York
                                       January 23, 2007
 5                        Plaintiff,

 6               v.

 7  ALBANY MEDICAL CENTER et al,

 8                        Defendants.
    --------------------------------
 9            TRANSCRIPT OF STATUS/DISCOVERY CONFERENCE
              BEFORE MAGISTRATE-JUDGE DAVID R. HOMER
10                  UNITED STATES DISTRICT JUDGE

11  A P P E A R A N C E S :

12  For the Plaintiff:    MICHAEL RHODES-DEVY, ESQ.
                          Of Counsel to Towne Law
13                        Office of Michael Rhodes-Devy
                          P.O. Box 15072, 7 Wembley Court
14                        Albany, New York 12212-5072
                          518-452-1800
15                        518-452-6435 fax
                          Email: DeveyLaw@aol.com
16
    For the Plaintiff:    DANIEL A. SMALL, ESQ.
17                        Cohen, Milstein Law Firm
                          1100 New York Avenue, N.W.
18                        West Tower, Suite 500
                          Washington, DC 20005
19                        202-408-4600
                          202-408-4699 fax
20                        Email: dsmall@cmht.com

21  For the Plaintiff:    ALLYSON B. BAKER, ESQ.
22                        Cohen, Milstein Law Firm
                          1100 New York Avenue, N.W.
23                        West Tower, Suite 500
                          Washington, DC 20005
24                        202-408-4600
                          202-408-4699 fax
25                        Email: abaker@cmht.com
```

1    would be dictating what documents are produced by the National.

2    And you do have a remedy with respect to your subpoena to the

3    National.

4              MR. SHUMAKER:  Absolutely.  And we will follow through

5    with that.  We just felt that given that we had Your Honor's

6    attention here on the 23rd that we would bring the issue before

7    you.

8              THE COURT:  I understand.  Let's talk about the Local.

9              MR. SHUMAKER:  With respect to the Local, they have

10   raised a number of objections; over breadth, undue burden,

11   Section 7, Constitution.  When you cut through the hyperbole and

12   numerous objections, at the end of the day what we do have is

13   the Union admitting that they have "massive amount of material"

14   relating to nursing compensation and nursing recruiting.

15             THE COURT:  We're still focused on class certification

16   here, so this is not matched discovery.

17             MR. SHUMAKER:  I understand.  And what the discovery

18   seeks to get at is to what extent is the SEIU driving this case.

19   We have knowledge --

20             THE COURT:  Let's assume that they're driving it.

21             MR. SHUMAKER:  Okay.

22             THE COURT:  So what?

23             MR. SHUMAKER:  The fact that they are driving this

24   case suggests that the representative of this class is not a

25   proper representative.  If you look at the case law, there is

Marjory Unger v. Albany Medical Center et al                11

1   case law out there --

2           THE COURT:  What facts are in issue for which you seek

3   discovery?

4           MR. SHUMAKER:  The fact that the class representative

5   is a pawn for the SEIU.

6           THE COURT:  Well, pawn is perhaps a legal conclusion,

7   but it's a conclusion.  What is the fact -- what facts do you

8   seek to assert?

9           MR. SHUMAKER:  The facts we seek to establish is

10  exactly how these Named Plaintiffs came to be --

11          THE COURT:  There's one Named Plaintiff.

12          MR. SHUMAKER:  There's one Named Plaintiff but she's

13  being withdrawn.  We found out just last week that the only

14  Plaintiff -- as we sit here before Your Honor, we have no Named

15  Plaintiff; there is no one.  They had sought to amend the

16  Complaint.  Defendants gave that consent to that Amended

17  Complaint with the assumption that she would stay.  Now, we

18  learn that she's going to not participate in this case, and

19  that's one of the issues we were hoping to raise with you.

20          THE COURT:  All right, hold on for a second.

21          MR. SHUMAKER:  We're changing Plaintiffs here?

22          MR. SMALL:  Yes, Your Honor; with the Court's

23  permission, we will asking the Court to do that.  If I may refer

24  to Ms. Baker to address that issue?

25          THE COURT:  All right, as long as Ms. Baker uses the

Marjory Unger v. Albany Medical Center et al                15

```
 1              MR. TOWNE:  Excuse me, Your Honor, I have the answer
 2   to that.
 3              THE COURT:  Okay.
 4              MR. TOWNE:  This is James Towne.  They are not Union
 5   members.
 6              THE COURT:  Okay.
 7              MR. TOWNE:  Ms. Fleishman contacted -- for the record
 8   -- Ms. Fleishman contacted my office through one of my
 9   relatives.  Ms. Cullen is the sister of one of our attorneys in
10   our office.
11              THE COURT:  You're going to turn your family into
12   this, aren't you?
13              MR. TOWNE:  I have to.
14              THE COURT:  (Laughter.)
15              MR. TOWNE:  They have no connection with the Union,
16   Your Honor.
17              THE COURT:  All right.
18              MR. SHUMAKER:  And that's the first I've heard of
19   that, Your Honor.  The fact of the matter is the SEIU has funded
20   the litigation; they've admitted to that.  They have a 25
21   percent financial interest in this case, notwithstanding that
22   they assert that they are not a party and have no control over
23   this case.  They're even paying the Plaintiff's counsel's fees,
24   Jams & Hoffman in bringing this case.
25              It would seem to us, Your Honor, the SEIU clearly has
```

1    some interest in this case.  And for that reason they have an

2    obligation to respond to discovery related to such poor issues

3    as their role in bringing the case, documentation relating to

4    nursing compensation.

5            They talk about this huge investigation relating to

6    nursing compensation and the assertion --

7            THE COURT:  What difference does it make what they

8    have done with respect to documentation of nurse compensation

9    for class certification?

10           MR. SHUMAKER:  Because the information they have, the

11   data about the compensation is relevant to how this case will be

12   maintained as a class action.

13           THE COURT:  How?

14           MR. SHUMAKER:  They have collected information that

15   presumably relates to showing that the compensation of these

16   individuals was somehow negatively affected.  In much the same

17   way that the Plaintiffs have subpoenaed 20 plus associations

18   seeking documentation on 50 some odd requests, including much

19   the same the information we're seeking.  If it's relevant to the

20   Korean Nurses Association, we would submit the same information

21   is relevant at a minimum --

22           THE COURT:  It may be relevant on the merits.  How is

23   it relevant to class certification?

24           MR. SHUMAKER:  Because -- what is at issue, Your

25   Honor?

Marjory Unger v. Albany Medical Center et al                21

1    are no proper representatives.

2          MR. SHUMAKER:  That's not what I'm saying.  I'm saying

3    that we have the ability to look into whether in fact that

4    representative has interests so in line with the Union that they

5    cannot serve the proper representative.

6          THE COURT:  Well, then you need to -- the discovery

7    regarding the particular individual Plaintiffs may be relevant.

8          MR. SHUMAKER:  Okay.

9          THE COURT:  Discovery regarding the Union's purposes

10   generally is not.

11         MR. SHUMAKER:  Okay.  In addition to that though, the

12   information in their file relating to nurse compensation and the

13   nurse shortage issue seems to be particularly relevant to a case

14   in which those principles are the core of the case, and they

15   admit that they have this information; they admit that they did

16   the investigation; and that that investigation --

17         THE COURT:  Which relates to what, typicality?

18         MR. SHUMAKER:  It relates the ability for this class

19   to be proven on a class-wide basis.

20         THE COURT:  Well, that's a different issue from the

21   particular Plaintiffs.  You're not talking about -- I think

22   you're talking about typicality if I'm not mistaken; that the

23   members of the putative class -- that these individuals are

24   typical of the members of the class.

25         MR. SHUMAKER:  That is exactly right, Your Honor.  I

Marjory Unger v. Albany Medical Center et al          30

1  the Complaint --

2          MR. SHUMAKER:  Okay.  And I --

3          THE COURT:  -- period.  That's going to pare down the

4  scope of you demand.

5          MR. SHUMAKER:  I understand that, and I believe that

6  the other information that's being sought with respect to the

7  Union's role in bringing this case.  Documents relating to what

8  is it we're going to do, how are we going to move on this to

9  develop this action, is relevant to --

10          THE COURT:  I understand your position.  We talked

11  about it before and in my view that the relevancy of the Union's

12  involvement in bringing this law suit class certification is

13  non-existent.  The relevancy with the Union's involvement with

14  particular named putative class representatives is relevant.  I

15  am told that that's already been disclosed, so I've moved onto

16  other issues.  I don't want to go back and revisit the other

17  ones.

18          MR. SHUMAKER:  The other issue that pops in my head,

19  Your Honor, is the identity of the other individual that they

20  contacted and potentially serviced as a class of

21  representatives.

22          THE COURT:  Who declined?

23          MR. SHUMAKER:  Yes, Your Honor.

24          THE COURT:  How is that relevant?

25          MR. SHUMAKER:  It would seem that that would suggest

Marjory Unger v. Albany Medical Center et al                    32

1    view this as a class-wide treatment in common (inaudible).

2         THE COURT:  Well, your curiosity is going to kill you,

3    Mr. Shumaker.  No, no, that's irrelevant as well.  What the

4    Union's motives were -- I mean if we're going to suggest impure

5    thoughts on behalf of non-parties here, the parties are full of

6    impure thoughts themselves, sir.

7         MR. SHUMAKERS:  I'm not casting impure thoughts, I'm

8    simply saying clearly they're behind this case and to the extent

9    they're behind this case and whether it can be maintained as a

10   class action that would seem to be relevant.

11        THE COURT:  Okay, I understand.  That request is

12   denied.

13        MR. LEVY:  I don't know if it's necessary in light of

14   your ruling, but the case cited by NLRB decision provided by

15   counsel really isn't adequate to this situation.  (Inaudible).

16   This he only questions that were asked for discovery were about

17   the law suit information, and this is a completely different

18   matter for discovery.

19        THE COURT:  I understand.  An order will be entered.

20   I am directing the Union to produce the wage information that I

21   described before.

22        MR. SHUMAKER:  Just one matter of clarification in

23   terms of the wage information from the SEIU.  Is it just the

24   information --

25        THE COURT:  It's from the local.

# Exhibit 2

℗AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

For the _____    DISTRICT OF _____    Columbia _____

Pat Cason-Merendo and Jeffrey A. Suhre

V.

Detroit Medical Center, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  2:06cv15601 (E.D. Mich)

TO:  Service Employees International Union
c/o Matthew Clash-Drexler, Esq.
Bredhoff & Kaiser
805 Fifteenth Street NW, Washington, DC 20005

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached Schedule A.

| PLACE    Jones Day, 51 Louisiana Avenue, NW, Washington, D.C. 20001 | DATE AND TIME 6/1/2007 10:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE 5/8/07 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Michael R. Shumaker, Jones Day, 51 Louisiana Avenue, N.W., Washington, D.C., 20001, (202) 879-3939

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## <u>SCHEDULE A – DOCUMENT REQUESTS</u>

1.     All Documents consisting of, concerning or referring to any of (i) the Named Plaintiffs, (ii) the Hospital Defendants, (iii) the Lawsuit, (iv) compensation for nurses employed in or living in the Detroit MSA, (v) the employment options for nurses employed in or living in the Detroit MSA, (vi) any contemplated legal or other action against the Hospital Defendants or any other employer of nurses employed in the Detroit MSA, and (vii) any contemplated legal or other action against the Hospital Defendants outside the Detroit MSA.

**To the extent they are not encompassed by the foregoing general request, Hospital Defendants request the following Documents:**

2.     All Documents consisting of, concerning or referring to Communications between or among, or sent or received by, the SEIU and Counsel of Record regarding any of the persons, entities, matters or subjects identified in Request 1 above.

3.     All Documents consisting of, concerning or referring to any pre-filing investigation of the allegations or issues in the Lawsuit, including all notes or memoranda relating to any interviews or meetings with any nurse or any other individual.

4.     All Documents consisting of, concerning or referring to Communications between or among, or sent or received by, any SEIU official, employee, agent, consultant, committee, affiliate or ad hoc working group regarding any of the persons, entities, matters or subjects identified in Request 1 above.

5.     All Documents consisting of, concerning or referring to efforts by anyone to identify individuals to function as named plaintiffs for the Lawsuit.

6.      All Documents consisting of, concerning or referring to efforts to encourage any Named Plaintiff or anyone else to obtain or accept employment with any Hospital Defendant.

7.      All Documents consisting of, concerning or referring to contracts or agreements (including drafts or proposed contracts or agreements) between or among the SEIU and any Counsel of Record, or any partner, agent, or employee of such counsel.

8.      All Documents consisting of, concerning or referring to the payment or guarantee of payment, in whole or in part, of the Named Plaintiffs' attorneys fees or litigation costs in the Lawsuit, or the payment or guarantee of any funds, fee or cost, to or for any of the Named Plaintiffs.

9.      All Documents consisting of, concerning or referring to any assistance or information that the SEIU offered or provided to any Named Plaintiff or any Counsel of Record relating to the persons, entities, matters or subjects identified in Request 1 above.

10.     All Documents consisting of, concerning or referring to Communications between or among the SEIU and any of the Named Plaintiffs.

11.     All Documents consisting of, concerning or referring to Communications between or among the SEIU and any member of the putative class in the Lawsuit relating to the persons, entities, matters or subjects identified in Request 1 above.

12.     All Documents consisting of, concerning or referring to any contract or agreement (including drafts or proposed contracts or agreements) between, among or including the SEIU and any of the Named Plaintiffs.

2

13.    All Documents consisting of, concerning or referring to Communications between or among the SEIU and any of the Hospital Defendants relating to the persons, entities, matters or subjects identified in Request 1 above.

14.    All Documents consisting of, concerning or referring to Communications between or among the SEIU and any hospital alleged in the Complaint to be a co-conspirator with the Hospital Defendants relating to the persons, entities, matters or subjects identified in Request 1 above.

15.    All Documents consisting of, concerning or referring to Communications between or among the SEIU and any RN Employer in the Detroit MSA relating to the persons, entities, matters or subjects identified in Request 1 above.

16.    All Documents consisting of, concerning or referring to Communications between or among the SEIU and any person or entity, other than those referred to in Requests 2 through 15 above, that relate to any Hospital Defendant or any Named Plaintiff.

17.    All Documents consisting of, concerning or referring to (i) the Lawsuit and (ii) any plan, proposal or action to organize the employees of any of the Hospital Defendants and/or obtain certification of the SEIU as the collective bargaining representative of any unit of any such Hospital Defendant's employees.

18.    All press releases, draft press releases and Documents relating thereto created or distributed by the SEIU concerning or referring to any of the Named Plaintiffs, any of the Hospital Defendants, or the Lawsuit.

3

19.    All Documents consisting of, concerning or referring to the allegations in the Complaint that any of the Hospital Defendants engaged in Communications, exchanges of information or agreements with each other concerning wages of nurses, or otherwise engaged in conduct implicating the Sherman Act.

20.    All Documents consisting of, concerning or referring to research, studies or reports prepared or funded in whole or in part by the SEIU regarding compensation paid to nurses or a nursing shortage, including, without limitation, the study titled "Solving the Nursing Shortage Through Higher Wages," purportedly issued by the Institute for Women's Policy Research.

21.    All Documents consisting of, concerning or referring to Communications with the Institute for Women's Policy Research, Vicky Lovell, Ph.D. or Heidi Hartman.

22.    All Documents consisting of, concerning or referring to any "neutrality" or "cooperation" agreement between the SEIU, or any other union, and any RN Employer within the Detroit MSA, or any request that any RN Employer within the Detroit MSA enter into any such agreement.

23.    All Documents consisting of, concerning or referring to the SEIU's Corporate Campaign or Public Campaign against any Hospital Defendant.

24.    All Documents consisting of, concerning or referring to how to run a Corporate Campaign or Public Campaign, such as manuals, guidelines, procedures, strategies, etc., including, without limitation, the use of litigation as a tool in a Corporate Campaign or Public Campaign.

25.    All Documents consisting of, concerning, or referring to the alleged market for registered nurses in the Detroit MSA, including but not limited to the number of registered nurses that are employed and/or live within the Detroit MSA, the Detroit MSA's geographic boundaries, the employment opportunities for registered nurses within and outside the Detroit MSA, and the staffing levels or trends for registered nurses within and outside the Detroit MSA.

26.    All Documents consisting of, concerning or referring to registered nurses that live or work within the Detroit MSA and who also work outside the Detroit MSA.

27.    All Documents consisting of, concerning or referring to registered nurses who live outside the Detroit MSA, but who would or could work within the Detroit MSA.

28.    All Documents consisting of, concerning or referring to the actual or potential effect of this lawsuit on the SEIU and/or its efforts to organize registered nurses.

29.    All Documents consisting of, concerning or referring to the SEIU's payment of any funds, money or other items of value for or towards the investigation of the allegations or issues in the Lawsuit, including any checks, correspondence or bills for services rendered.

30.    All Documents consisting of, concerning or referring to the SEIU's employment of registered nurses, including but not limited to their job descriptions, roles, compensation and benefits received.

31.    All Documents consisting of, concerning or referring to Communications, payment or agreements (including drafts or proposed agreements) between the SEIU and the Mintz Group relating to the persons, entities, matters or subjects identified in Request 1 above.

32.     All Documents consisting of, concerning or referring to research, studies, reports, or notes or memoranda relating to any interviews or meetings with any nurse or any other individual prepared by The Mintz Group relating to the persons, entities, matters or subjects identified in Request 1 above.

33.     All Documents consisting of, concerning or referring to Communications, payment or agreements (including drafts or proposed agreements) between the SEIU and Barbara Bergman, including her agents and employees, relating to the persons, entities, matters or subjects identified in Request 1 above.

34.     All Documents consisting of, concerning or referring to research, studies, reports, or notes or memoranda relating to any interviews or meetings with any nurse or any other individual prepared by Barbara Bergman, including her agents and employees, relating to the persons, entities, matters or subjects identified in Request 1 above.

35.     All Documents consisting of, concerning or referring to Communications, payment or agreements (including drafts or proposed agreements) between the SEIU and The Feldman Group relating to the persons, entities, matters or subjects identified in Request 1 above.

36.     All Documents consisting of, concerning or referring to research, studies, reports, or notes or memoranda relating to any interviews or meetings with any nurse or any other individual prepared by The Feldman Group relating to the persons, entities, matters or subjects identified in Request 1 above.

37.     All documents consisting of, concerning or referring to the SEIU's, or any other person's or entity's, petition or effort to encourage the Department of Justice or any other federal or state agency to investigate the alleged suppression of nurse compensation by hospitals.

38.     All e-mails consisting of, concerning or referring to any of the foregoing Requests.

The subpoena is to be responded to in accordance with the following definitions and instructions.

## DEFINITIONS

1.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) between individuals or entities whether oral, written, electronic or otherwise; whether in-person or telephonic; whether direct or through an intermediary.

2.    "Complaint" means the Complaint and all amended Complaints filed by the Named Plaintiffs in the Lawsuit.

3.    "Corporate Campaign" means any attempt by a union or other labor organization to persuade or influence an employer, either directly or through its employees, to yield to the union's or organization's requests to enter into a neutrality agreement, to recognize the union or organization as a bargaining representative, or to enter into labor negotiations or a collective bargaining agreement; or to yield to the union's or organization's position in connection with labor negotiations or an attempt to organize a place of business for the purpose of labor negotiations.

4.    "Counsel of Record" means any attorney or firm representing a party to the Lawsuit, including any partner, member, shareholder, affiliate, employee, agent, or representative of such attorney or firm.

5.    "Detroit MSA" means the Detroit Metropolitan Statistical Area as that term is defined in the Complaint.

8

6.    "Document" has the same meaning as in Rule 34 of the Federal Rules of Civil Procedure, and includes, without limitation, any writing, notes, photograph, chart, graph, video tape, audio tape, computer disk, or electronically stored data (including electronic mail) and metadata, which is in your actual or constructive possession, custody or control, and includes, without limitation, all originals, copies, drafts (sent or unsent), or other nonconforming copies of every kind.

7.    "Hospital Defendant" means any defendant named in the Lawsuit, including Detroit Medical Center; Henry Ford Health System; Mount Clemens General Hospital, Inc.; St. John Health; Oakwood Healthcare Inc.; and Bon Secours Cottage Health Services.

8.    "Lawsuit" means the action captioned <u>Pat Cason-Merendo and Jeffrey A. Suhre, et al. v. Detroit Medical Center, et al.</u>, Case Number 2:06cv15601, currently pending in the United States District Court for the Eastern District of Michigan (Southern Division), and includes any of the allegations made in the Complaint.

9.    "Named Plaintiffs" means Pat Cason-Merendo and Jeffrey A. Suhre, and any plaintiffs subsequently named in any amended Complaints, and any of their employees, agents, attorneys or representatives.

10.    "Public Campaign" means any attempt by a union or other labor organization to persuade or influence public opinion in connection with labor negotiations or an attempt to organize a place of business for the purpose of labor negotiations.

11.    "RN Employer" means any person or entity that employs one or more registered nurses, including but not limited to a hospital, surgery center, ambulatory care center, nursing home, nurse agency, clinic or physician's office.

12.    "SEIU" means the Service Employees International Union, including but not limited to SEIU Local 79, and its officers, agents, employees, representatives, members, affiliates, representatives and attorneys (in-house and outside counsel), including without limitations, the SEIU's Nurse Alliance.

13.    The definitions of "Named Plaintiffs," "Hospital Defendants," and "SEIU" include the past and present officers, directors, agents, employees, attorneys, general partners, limited partners, members, representatives, divisions, subsidiaries, affiliates, predecessors and successors, of each individual or entity described therein.

## INSTRUCTIONS

1.    All Documents covered by this request shall be produced in a manner consistent with Fed. R. Civ. P. 45(d)(1) at the place and time indicated by the subpoena.

2.    Only a single copy of each responsive document is requested; however, all drafts and non-identical duplicates of each responsive document are requested, whether different from the original because of notes, marginalia, or attachments not present in or on the original document.

3.    If you refuse to disclose any document requested herein (or any portion thereof) on the grounds of privilege or otherwise, please provide the following information, as required by Fed. R. Civ. P. 45(d)(2): (a) the nature and type of document (e.g., memorandum,

10

letter, report, etc.); (b) the subject matter of the document; (c) the date of the document; (d) an

identification of each specific privilege or other claim asserted as grounds for non-production; (e)

the holder of the privilege; and (f) such other information as is sufficient to identify the

document, including the author(s), addressee(s), and any other recipient(s) of the document, and,

where not apparent, the relationship of the author(s), addressee(s), and any other recipient(s) to

each other.

       4.     Unless otherwise indicated, all requests seek Documents from January 1,

2002 through the present.

# Exhibit 3

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001-2113
TELEPHONE: 202-879-3939 • FACSIMILE: 202-626-1700

(202) 879-5411
lpgabel@jonesday.com

May 31, 2007

<u>VIA E-MAIL AND FED/EX</u>

Matthew Clash-Drexler, Esq.
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street, N.W.
Washington, D.C. 20005

      Re:   *Cason-Merendo, et al. v. Detroit Medical Center, et al.*, Case No. 06-CV-15601
           (E.D. Mich.)

Dear Matthew:

      Please find enclosed a subpoena commanding deposition testimony from the Service
Employees International Union ("SEIU") pursuant to Federal Rules of Civil Procedure 45 and
30(b)(6). Based upon our correspondence with Andy Roth at your firm, it is our understanding
that you have agreed to accept service on the SEIU's behalf. Please contact me if you have any
questions.

                Sincerely yours,

                Louis P. Gabel

cc: Andrew Roth, Esq.

AO88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

### DISTRICT OF COLUMBIA

Pat Cason-Merendo, et al.

      V.

Detroit Medical Center, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  06-CV-15601 (E.D. Mich.)

TO:  Service Employees International Union
      c/o Matthew Clash-Drexler, Esq.
      805 Fifteenth Street, N.W.
      Washington, D.C. 20005

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   Jones Day<br>51 Louisiana Avenue, N.W., Washington, D.C. 20001 | DATE AND TIME<br>7/10/2007 9:00 am |
|---|---|

☐   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
|  | 5/31/2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Michael R. Shumaker, Attorney for Defendant St. John Health
Jones Day, 51 Louisiana Avenue, N.W., Washington, D.C. 20001    Telephone: (202) 879-3939

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88  (Rev.  12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                          DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
    (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
    (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
    (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested.  If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling.  Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
    (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
        (i) fails to allow reasonable time for compliance;
        (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
        (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    (B) If a subpoena
        (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
        (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
        (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
    (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
    (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
    (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
    (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify conditions for the discovery.
    (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
    (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued.  An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

<u>**SCHEDULE A - DEPOSITION TOPICS**</u>

Pursuant to Rules 45 and 30(b)(6) of the Federal Rules of Civil Procedure, St. John

Health ("St. John") will take the testimony upon oral examination of the Service Employees

International Union ("SEIU") on the following subjects:

1.  The relationship between the SEIU and the Named Plaintiffs or their agents, including

    any and all communications regarding:

    (a)   the Lawsuit identified in the subpoena or any other actual or potential lawsuits
          regarding registered nurse (RN) compensation (including the SEIU's involvement
          in such lawsuits);

    (b)   the identification of individuals to function as named plaintiffs (including the
          SEIU's involvement in the recruiting and selection of potential plaintiffs); and

    (c)   efforts of the SEIU, or others, to encourage any Named Plaintiff or anyone else to
          obtain or accept employment with any Hospital Defendant.

2.  The support, financial or otherwise, offered and/or provided by the SEIU to the Named

    Plaintiffs and their counsel in the Lawsuit identified in the subpoena, and the SEIU's role

    in the Lawsuit including:

    (a)   resources, assistance, and/or financial support provided by the SEIU to the Named
          Plaintiffs or their counsel (including the retention of, and payments to, the law
          firm James & Hoffman prior to, and subsequent to, the filing of the above-
          captioned case);

    (b)   the purported pre-filing investigation conducted by the SEIU and any other
          information, studies, surveys, or reports that have been, or will be, provided to
          Named Plaintiffs or their counsel; and

    (c)   the retention of, and collaboration with any consultants, including but not limited
          to Barbara Bergmann, the Feldman Group, the Mintz Group, and the Global
          Strategy Group.

3.  The SEIU's decision to investigate allegations that nurse wages were impacted by a

    conspiracy amongst employers in the Detroit MSA, or to fund such an investigation or

    otherwise commit resources to such an investigation, including:

(a)     the circumstances upon which the SEIU became aware of the theory that nurse wages may have been impacted by alleged violations of antitrust laws;

(b)     the circumstances upon which the SEIU became aware of any facts to support the allegations in the Complaint;

(c)     who within the SEIU decided to investigate, or fund investigations into whether any antitrust laws were violated in the Detroit MSA;

(d)     the factors that the SEIU considered in determining whether to investigate, fund investigations, or otherwise commit resources to the Lawsuit identified in the subpoena; and

(d)     the duration and cost of the SEIU's investigation of nurse wages in the Detroit MSA.

4. The individuals and entities that the SEIU communicated with in connection with its investigation of the allegations contained in the Complaint or considered for inclusion in the Complaint, both before and after the filing of the initial Complaint in this Litigation.

5. Studies, reports, surveys, or other information collected, compiled, commissioned, or created by the SEIU concerning the nursing market in Detroit, including, but not limited to, nurse wages, nurse benefits, nurse mobility, and nurse employment options.

6. All information collected by the SEIU, or on its behalf, concerning or relating to whether employers in the Detroit MSA conspired with respect to RN wages, including any evidence of agreements or communications amongst any employers in the Detroit MSA concerning or relating to nurse wages, benefits, or working conditions.

7. The SEIU's efforts to encourage any individuals or entities, including the United States Department of Justice, to investigate the allegations contained in the Complaint.

8. The actual or potential impact of this lawsuit on the SEIU, including the lawsuits impact on the SEIU's visibility or status amongst nurses in the San Antonio MSA, and the role this Litigation plays in the SEIU's organizing activities, campaign, or efforts in the Detroit area.

9. The SEIU's collection, preservation, and production of documents in response to the subpoena issued by St. John, including:

    (a)    the scope of the search performed;

    (b)    the identification of the individual employees, files, computers, location, and divisions within the SEIU that were searched for responsive documents; and

    (c)    identification, by specific Bates ranges, of the individual custodians or sources for the documents that have been produced by the SEIU.

## INSTRUCTIONS AND DEFINITIONS

The deposition will take place before a notary public, or any other officer authorized to administer oaths, at the office of Jones Day, 51 Louisiana Avenue, N.W., Washington, D.C., 20001-2113, on July 10, 2007, beginning at 9:00 a.m. and continuing on successive days as necessary. Such deposition will be recorded by stenographic and/or sound and visual means.

The following definitions apply to the topics listed above:

    1.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) between individuals or entities whether oral, written, electronic or otherwise; whether in-person or telephonic; whether direct or through an intermediary.

    2.    "Detroit MSA" means the Detroit Metropolitan Statistical Area as that term is defined in the Complaint.

    3.    "Hospital Defendant" means any defendant named in the Lawsuit, including Detroit Medical Center; Henry Ford Health System; Mount Clemens General Hospital; Inc.; St. John Health; Oakwood Healthcare Inc.; and Bon Secours Cottage Health Services.

3

4.    "Lawsuit" means the action captioned <u>Pat Cason-Merendo, et al. v. Detroit Medical Center, et al.</u>, case number 06-15601, currently pending in the United States District Court for the Eastern District of Michigan, and includes any of the allegations made in previous or subsequent Complaints.

5.    "Named Plaintiffs" means Pat Cason-Merendo and Jeffrey A. Suhre, and any further plaintiffs subsequently named in any amended complaints, and any of their employees, agents, attorneys or representatives.

6.    "SEIU" means the Service Employees International Union and its officers, agents, employees, representatives, members, affiliates, representatives and attorneys (in-house and outside counsel), including without limitations, the SEIU's Nurse Alliance.

7.    The definitions of "Named Plaintiffs," "Hospital Defendants," and "SEIU" further include the past and present officers, directors, agents, employees, attorneys, general partners, limited partners, members, representatives, divisions, subsidiaries, affiliates, predecessors and successors, of each individual or entity described therein.

# Exhibit 4

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

Pat Cason-Merendo, et al.

V.

Detroit Medical Center, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  06-CV-15601 (E.D. Mich.)

TO:  Elizabeth Buchanan
c/o Matthew Clash-Drexler, BREDHOFF & KAISER, PLLC
805 Fifteenth Street, N.W.
Washington, D.C. 20005

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION    Jones Day<br>51 Louisiana Avenue, N.W., Washington, D.C. 20001 | DATE AND TIME<br>November 29, 2007 - 9:00am |
|---|---|

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
|  | 10/23/2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Michael R. Shumaker, Attorney for Defendant St. John Health
Jones Day, 51 Louisiana Avenue, N.W., Washington, D.C. 20001    Telephone: (202) 879-3939

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

AO88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

### DISTRICT OF COLUMBIA

Pat Cason-Merendo, et al.

V.

Detroit Medical Center, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  06-CV-15601 (E.D. Mich.)

TO:   David DeRosa
c/o Matthew Clash-Drexler, BREDHOFF & KAISER, PLLC
805 Fifteenth Street, N.W.
Washington, D.C. 20005

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION  Jones Day 51 Louisiana Avenue, N.W., Washington, D.C. 20001 | DATE AND TIME November 30 2007 - 9:00am |
|---|---|

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE 10/23/2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Michael R. Shumaker, Attorney for Defendant St. John Health
Jones Day, 51 Louisiana Avenue, N.W., Washington, D.C. 20001    Telephone: (202) 879-3939

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev.  12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested.  If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling.  Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved.  A receiving party may promptly present the information to the court under seal for a determination of the claim.  If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it.  The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.  Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued.  An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

AO88  (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

### DISTRICT OF COLUMBIA

Pat Cason-Merendo, et al.

**SUBPOENA IN A CIVIL CASE**

V.

Detroit Medical Center, et al.

Case Number:[1]   06-CV-15601 (E.D. Mich.)

TO: Michael Kapsa
c/o Matthew Clash-Drexler, BREDHOFF & KAISER, PLLC
805 Fifteenth Street, N.W.
Washington, D.C. 20005

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   Jones Day<br>51 Louisiana Avenue, N.W., Washington, D.C. 20001 | DATE AND TIME<br>November 26, 2007 - 9:00am |
|---|---|

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>10/23/2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Michael R. Shumaker, Attorney for Defendant St. John Health
Jones Day, 51 Louisiana Avenue, N.W., Washington, D.C. 20001    Telephone: (202) 879-3939

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# Exhibit 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAT CASON-MERENDA and JEFFREY A. )
SUHRE on behalf of themselves and others )
similarly situated, )
 ) Case No. 06-15601
 )
 Plaintiffs, )
 ) Hon. Gerald E. Rosen
 )
 v. ) Magistrate: Mona K. Majzoub
 )
DETROIT MEDICAL CENTER, HENRY )
FORD HEALTH SYSTEM, MOUNT )
CLEMENS GENERAL HOSPITAL, INC., )
ST. JOHN HEALTH, OAKWOOD )
HEALTHCARE INC., BON SECOURS )
COTTAGE HEALTH SERVICES, WILLIAM )
BEAUMONT HOSPITAL d.b.a BEAUMONT )
HOSPITALS, and TRINITY HEALTH CORP., )
 )
 Defendants. )

PLAINTIFFS' RESPONSES TO ST. JOHN HEALTH'S
SECOND SET OF INTERROGATORIES

  Plaintiffs Pat Cason-Merenda and Jeffrey A. Suhre ("Plaintiffs"), by and through their

attorneys of record, respond to Defendant St. John Health's Second Set of Interrogatories,

pursuant to Rule 33 of the Federal Rules of Civil Procedure.

GENERAL OBJECTIONS

  1. Plaintiffs are continuing to investigate the facts relating to this action. Plaintiffs'

answers contained herein are therefore based only upon such information and documents as are

presently available to, and specifically known to, Plaintiffs. The responses are given without

prejudice to Plaintiffs' right to produce evidence of any facts that Plaintiffs may later recall or find through research, investigation, analysis, and discovery.

2. Plaintiffs object to each Interrogatory that purports to impose obligations greater than those imposed by the Federal Rules of Civil Procedure or any applicable Local rules.

3. Plaintiffs object to each Interrogatory to the extent it seeks information that calls for the disclosure of information that invades the attorney client privilege, the attorney work product doctrine or any other privilege or protection. Information covered by such privileges is not subject to disclosure and the Interrogatories will be construed as not seeking such information.

### Responses and Objections

19.     Identify all persons who you believe have knowledge of relevant facts relating to the allegations in the Complaint and identify the allegations upon which you believe they have knowledge.

RESPONSE:  Plaintiffs object to this Request because it seeks information protected by the attorney-client privilege and/or the work product doctrine. Subject to, and without waiving this objection, Plaintiffs state that in addition to Ms. Cason-Merenda and Mr. Suhre, the persons identifying in Exhibit A to these responses have information regarding hospital nurse compensation practices in Detroit area hospitals and other matters as identified in Exhibit A.

20.     Identify and describe with particularity the circumstances by which each of the Plaintiffs became acquainted with Plaintiffs' counsel and retained or otherwise engaged counsel to represent them in this lawsuit, including the dates on which Plaintiffs' counsel was retained.

RESPONSE BY PLAINTIFF PAT CASON-MERENDA:  Plaintiff objects to this

- 2 -

Request because it seeks information protected by the attorney-client privilege. Subject to, and without waiving this objection, Plaintiff states: I received a telephone call from my friend, Maureen Taylor, who said that she had spoken with Stephen Wasinger, a lawyer who represents Ms. Taylor. Mr. Wasinger was interested in speaking with any of Ms. Taylor's nurse friends who might be interested in becoming involved in a lawsuit about nurse wages. Ms. Taylor gave Mr. Wasinger's telephone number to me, and I called him to discuss this possibility. I signed a retainer agreement on October 2, 2006.

RESPONSE BY PLAINTIFF JEFF SUHRE: Plaintiff objects to this Request because it seeks information protected by the attorney-client privilege. Subject to, and without waiving this objection, Plaintiff states: I received a telephone call from Pat Cason-Merenda who asked if I was interested in speaking with attorney Stephen Wasinger about becoming involved in a lawsuit about nurse wages. Ms. Cason-Merenda gave Mr. Wasinger's telephone number to me, and I called him to discuss this possibility. I signed a retainer agreement on October 5, 2006.

21.    Identify each person who participated in any investigation of the facts that formed the basis for the claims asserted in this lawsuit or in gathering any evidence or information supporting, refuting or otherwise relating to the allegations in the Complaint, including without limitation any employee or representative of the Mintz Group, the Feldman Group, Barbara Bergmann, and the Global Strategy Group, and describe with particularity all such facts and evidence collected or gathered.

- 3 -

# Exhibit 6

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PAT CASON-MERENDA and JEFFREY A.
SUHRE on behalf of themselves and others
similarly situated,                                     Case No. 06-15601

                              Plaintiffs,               Hon. Gerald E. Rosen

         v.                                             Magistrate:  Donald A. Scheer

DETROIT MEDICAL CENTER, HENRY
FORD HEALTH SYSTEM, MOUNT
CLEMENS GENERAL HOSPITAL, INC., ST.
JOHN'S HEALTH, OAKWOOD
HEALTHCARE, INC., BON SECOURS
COTTAGE HEALTH SERVICES, WILLIAM
BEAUMONT HOSPITAL d.b.a. BEAUMONT
HOSPITALS, and TRINITY HEALTH CORP.,

                              Defendants.


## PLAINTIFFS' NOTICE OF WITHDRAWAL OF
## PLAINTIFF'S MOTION TO STRIKE EXHIBITS A AND B TO
## TRINITY HEALTH CORP.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
## PLAINTIFFS' THIRD CORRECTED CLASS ACTION COMPLAINT,
## AND TO STRIKE ALL REFERENCE TO THESE EXHIBITS

In light of the Stipulated Order Striking Exhibits A And B To Trinity Health Corp.'s Reply In Support Of Motion For Summary Judgment And All References Thereto From That Reply Memorandum (Submitted September 19, 2007), Plaintiffs WITHDRAW their Motion to Strike Exhibits A and B to Defendant Trinity Health Corp.'s Reply Memorandum in Support of its Motion to Dismiss Plaintiffs' Third Corrected Class Action Complaint (Docket No. 128).

Dated October 3, 2007

KELLER ROHRBACK L.L.P.

By:  /s/ Mark A. Griffin
Mark A. Griffin
Raymond J. Farrow
1201 Third Ave., Suite 3200
Seattle, WA 98101
Tel: 206-623-1900


Stephen Wasinger (P963)
STEPHEN F. WASINGER PLC
300 Balmoral Centre
32121 Woodward Avenue
Royal Oak, MI 48073
Tel:  248-554-6300
Fax: 248-479-0391

Charles E. Tompkins
Daniel A. Small
Kalpana Kotagal
COHEN MILSTEIN HAUSFELD & TOLL PLLC
1100 New York Avenue, NW,
Suite 500, West Tower
Washington D.C. 2005
Tel: 202-408-4600
Fax: 202-408-4699

Shelly L. Friedland
Sharon Robertson

COHEN MILSTEIN HAUSFELD & TOLL PLLC
150 East 52d Street, Thirtieth Floor
New York, NY 10022
Tel: 212-838-7797
Fax: 212-838-7745

David P. Dean
Mary Joyce Carlson
JAMES & HOFFMAN
1101 17th Street, NW, Suite 510
Washington, DC 20036-4748
Tel:  202-496-0500
Fax: 202-495-0555

Daniel E. Gustafson
Brian L. Williams
Amanda M. Martin
GUSTAFSON GLUEK PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Tel:  (612) 333-8844
Fax:  (612) 339-6622

Thomas P. Dove
Kimberly A. Kralowec
FURTH LEHMAN LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
Tel: (415) 433-2070
Fax: (415) 982-2076

Arnold Levin
Charles Schaffer
LEVIN, FISHBEIN SEDRAN & BERMAN
510 Walnut St., Ste 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663

*Co-Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAT CASON-MERENDA and JEFFREY A. SUHRE on behalf of themselves and others similarly situated, | ) ) ) | Case No. 06-15601 |
| Plaintiffs, | ) | |
| v. | ) | Hon. Gerald E. Rosen |
| | ) | |
| DETROIT MEDICAL CENTER, HENRY FORD HEALTH SYSTEM, MOUNT CLEMENS GENERAL HOSPITAL, INC., ST. JOHN HEALTH, OAKWOOD HEALTHCARE INC., BON SECOURS COTTAGE HEALTH SERVICES, WILLIAM BEAUMONT HOSPITAL, and TRINITY HEALTH CORP. | ) ) ) ) ) ) ) ) ) | Magistrate:  Hon. Donald A. Scheer |
| Defendants. | ) | |

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE
EXHIBITS A AND B TO
TRINITY HEALTH CORP.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' THIRD CORRECTED CLASS ACTION COMPLAINT,
AND TO STRIKE ALL REFERENCE TO THESE EXHIBITS

**ISSUE PRESENTED**

Should this Court strike Exhibits A and B filed by Trinity  Health Corp. to accompany its Reply In Support of its Motion to Dismiss Plaintiffs' Third Corrected Class Action Complaint, and strike all materials in that Reply that refer in any way to this material?

Plaintiffs' Answer:  Yes

## TABLE OF MOST APPROPRIATE AUTHORITIES

*Kostrzewa v. City of Troy*, 247 F.3d 633 (6th Cir. 2001)

*Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.,* 453 F.3d 494 (6th Cir 2006)

Trinity Heath Corp. has referenced in its Reply Memorandum, and provided to this Court, two documents produced in discovery in this case by defendants St. John Health and Mount Clemens General Hospital, Inc. It hardly needs stating that a Motion to Dismiss is to be determined based upon the four corners of the Complaint, and not based upon any submission of evidence by the any party. Further, a court must give a party notice and an opportunity to respond before converting any such motion to a Motion for Summary Judgment. Fed. R. Civ. P. 12(b). Trinity can hardly claim ignorance of this rule, since one of Trinity's own authorities states:

> Although in some instances the district court may consider evidence outside the complaint, in doing so it converts the motion to dismiss to a motion for summary judgment. *Fed. R. Civ. P. 12(b)(6)*. If the district court chooses to treat the motion as one for summary judgment, it must give the parties a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Id*. The district court did not give such notice to [plaintiff], however, and to rule on a motion for summary judgment without giving [plaintiff] the opportunity to produce evidence [to respond] … would constitute unfair surprise to the plaintiff, particularly because he did not file any affidavits or other documents outside the pleadings that would give him notice that the district court might venture outside the pleadings.

*Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001) (cited by Trinity in its Memorandum in Support of Motion to Dismiss at 4 n.1.); *see also*, *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.,* 453 F.3d 494, 503-04 (6th Cir 2006) (stating that it is reversible error for a district court to convert a motion to dismiss to a motion for summary judgment without giving all parties a "reasonable opportunity to present all material made pertinent to such a motion.") (internal cite omitted).

Here, Plaintiffs filed no evidence in support of their opposition. They filed no such

evidence for a simple reason. Even though Plaintiffs served Trinity with discovery as soon as Trinity's counsel appeared in this matter, Trinity has not yet answered a single Interrogatory or produced a single document in response to Plaintiffs' Requests for Production.[1]  Declaration of Mark A. Griffin in Support of Motion to Strike, ¶¶2-3.

It is necessary for this Court to strike this material, and all references thereto, because even if this Court does not consider the improperly appended materials submitted by Trinity, the mere submission of that material converts Trinity's Motion to Dismiss to a motion under Rule 56. *Arnold,* 453 F.3d at 503 ("Rule 12(c) requires only one action by the district court for the conversion to a summary judgment motion to occur: failure to exclude presented outside evidence. … [T]he plain language of Rule 12(c) does not require [the district court to consider or rely upon outside matters]; it only requires the presentation of matters outside the pleadings and the district court's failure to exclude such matters.")  Just as for Mr. Kostrzewa, Plaintiffs did not improperly file any evidence in support of their opposition.  Plaintiffs have not received a single document in response to their Requests for Production served upon six defendants on April 16, 2007, and upon Trinity and Beaumont as soon as they made an appearance in this matter.[2]  It would certainly constitute "unfair surprise" to convert this motion to one for Summary Judgment when Plaintiffs have received no evidence from Defendants to be able to respond to the materials

---

[1] On the very same day as Trinity filed this Reply, it provided Objections and Responses to Plaintiffs' First Set of Requests for Production.  However, consistent with the practice of all Defendants in this matter, none of whom has yet to produce a single responsive document, five months after being served with Plaintiffs' First Requests for Production, Trinity did not accompany those Objections and Responses with a single document.  Declaration of Mark A. Griffin in Support of Motion to Strike, ¶¶2-3.

[2] Plaintiffs have granted both Trinity and Beaumont requested extensions to answer Plaintiffs' discovery.

presented by Trinity.  The only way to prevent this, under the rules of this Circuit, is for this

Court to strike the improperly filed exhibits and disregard all reference to them in Trinity's brief.


DATED:  October 3, 2007

KELLER ROHRBACK L.L.P.

By:   /s/ Mark A. Griffin_____
Mark A. Griffin
Raymond J. Farrow
1201 Third Ave., Suite 3200
Seattle, WA 98101
Tel: 206-623-1900
Fax: 206-623-3384

Stephen Wasinger (P963)
STEPHEN F. WASINGER PLC
300 Balmoral Centre
32121 Woodward Avenue
Royal Oak, MI 48073
Tel:  248-554-6300
Fax: 248-479-0391

Charles E. Tompkins
Daniel A. Small
Kalpana Kotagal
COHEN MILSTEIN HAUSFELD & TOLL PLLC
1100 New York Avenue, NW,
Suite 500, West Tower
Washington D.C. 2005
Tel: 202-408-4600
Fax: 202-408-4699

Shelly L. Friedland
Sharon Robertson
COHEN MILSTEIN HAUSFELD & TOLL PLLC
150 East 52d Street, Thirtieth Floor
New York, NY 10022
Tel: 212-838-7797
Fax: 212-838-7745

David P. Dean
Mary Joyce Carlson
JAMES & HOFFMAN
1101 17th Street, NW, Suite 510
Washington, DC 20036-4748
Tel:  202-496-0500
Fax: 202-495-0555

Daniel E. Gustafson
Brian L. Williams
Amanda M. Martin
GUSTAFSON GLUEK PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Tel:  (612) 333-8844
Fax:  (612) 339-6622

Thomas P. Dove
Kimberly A. Kralowec
FURTH LEHMAN LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
Tel: (415) 433-2070
Fax: (415) 982-2076

Arnold Levin
Charles Schaffer
LEVIN, FISHBEIN SEDRAN & BERMAN
510 Walnut St., Ste 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663

*Co-Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Peter E. Boivin | pboivin@honigman.com |
| David A. Ettinger | dettinger@honigman.com |
| Louis P. Gabel | lpgabel@jonesday.com |
| David B. Gunsberg | davidgunsberg@hotmail.com |
| Benjamin J. Hanauer | bhanauer@mwe.com |
| David L. Hanselman, Jr. | dhanselman@mwe.com |
| David A. Hardesty | dhardest@clarkhill.com |
| Thomas M.J. Hathaway | thathaway@clarkhill.com |
| Sandra D. Hauser | shauser@sonnenschein.com |
| Michelle R. Heikka | mheikka@dickinsonwright.com |
| Fred K. Herrmann | fkh@krwlaw.com |
| Howard B. Iwrey | hiwrey@dykema.com |
| Sheldon H. Klein | klein@butzel.com |
| Shari Ross Lahlou | slahlou@crowell.com |
| David Marx, Jr. | dmarx@mwe.com |
| Kenneth J. McIntyre | kmcintyre@dickinsonwright.com |
| Terrence J. Miglio | tjm@kellerthoma.com |
| Mark T. Nelson | nelson@butzel.com |
| Paul F. Novak | pnovak@clarkhill.com |
| Robert N. Potter | rpotter@sonnenschein.com |
| Jonathon A. Rabin | jar@kellerthoma.com |
| Charles N. Raimi | craimi@dmc.org |

- 1 -

| Patricia C. Schabath | pschabat@dmc.org |
| Bruce L.  Sendek | sendek@butzel.com |
| Michael R.  Shumaker | mshumaker@jonesday.com |
| William D.  Slowey | slowey@butzel.com |
| Michael R.  Turco | turco@butzel.com |
| Stephen F. Wasinger | sfw@sfwlaw.com |
| Cathrine  Wenger | WengerC@trinity-health.org |
| Mark S. Wilkinson | msw@kellerthoma.com |
| Alethea A. Wilson | awilson4Wdmc.org |
| Bethany M. Wimsatt | bwimsatt@crowell.com |
| Stephen Y.  Wu | swu@mwe.com |
| L. Pahl  Zinn | pzinn@dickinsonwright.com |

KELLER ROHRBACK L.L.P.


s/ Mark A. Griffin
Mark A. Griffin
Raymond J. Farrow
KELLER ROHRBACK L.L.P.
1201 Third Ave., Suite 3200
Seattle, WA  98101
(206) 623-1900

# Exhibit 7

# QUARTERLY REPORT

## For the Quarter and Year
## Ended December 31, 2005

## Advocate Health Care Network
## and
## Subsidiaries

## QUARTERLY REPORT

**Advocate Health Care Network and Subsidiaries
For the Fourth Quarter and Year Ended December 31, 2005**

## CONTENTS

| | Page |
|---|---|
| Condensed Consolidated Financial Statements for the Fourth Quarter and Year Ended December 31, 2005: | |
| Condensed Consolidated Balance Sheets............................................. | 1 |
| Condensed Consolidated Statements of Operations and Changes in Net Assets............................................... | 3 |
| Condensed Consolidated Statements of Cash Flows ........................... | 5 |
| Notes to Condensed Consolidated Financial Statements ..................... | 6 |
| Management Discussion and Analysis of Financial Condition and Results of Operations........... | 11 |
| Utilization Statistics .............................................................................. | 33 |

**APPENDIX A – Consolidated Financial Statements for the Years
Ended December 31, 2005, 2004, and 2003 with Report of
Independent Auditors**

*Forward Looking Information:*
*This Quarterly Report contains disclosures, which contain "forward looking statements" within the meaning of the Federal securities laws. Forward looking statements include all statements that do not relate solely to historical or current fact and can be identified by the use of words "expect", "anticipate", "intend", "project", "likely", "may", "might", "estimate", "budget" and similar words or expressions. These forward looking statements are based on the current plans and expectations of Advocate Health Care Network as of the date of this report and are subject to a number of known and unknown risks and uncertainties inherent in the operation of health care facilities, many of which are beyond Advocate's control, that could significantly affect current plans and expectations and Advocate Health Care Network's future financial position and results of operations. Important factors that could cause results to differ materially from those expected by management include, but are not limited to, general, economic and business conditions, competition from other healthcare facilities in the Advocate service areas, an unfavorable pricing environment, failure to continue current cost control and pricing strategies, inability to achieve expected efficiencies in operations or effectively control health care costs, the efforts of insurers and others to contain health care costs, payor or insurance company financial problems or bankruptcy, delays in receiving payments, as has been experienced in Illinois as a result of state budget constraints, change in Medicare or Medicaid reimbursement formulas, the risk that managed care provider arrangements will not be negotiated or renewed on acceptable terms, results of reviews of Advocate's cost reports, future divestitures or acquisitions which may have a financial impact, availability and terms of capital to fund future expansion and ongoing capital needs, ability to obtain appropriate insurance coverage or for independent physicians on Advocate's medical staffs to obtain appropriate insurance coverage, loss experience under general and professional liability self-insurance programs and similar matters, new laws or regulations, the possible enactment of federal or state health care reform, fines or penalties related to regulatory matters, changes in accounting standards and practices, the outcome of pending and future litigation and government investigations, labor issues and the ability to attract and retain qualified management and other personnel, including affiliated physicians, nurses and medical support personnel. Given these uncertainties, bondholders and prospective bondholders are cautioned not to unduly rely on such forward-looking statements when evaluating the information presented in this report. Advocate disclaims any obligation, and makes no promise, to update any such factors or forward looking statements or to disclose any facts, events or circumstances after the date hereof that may affect the accuracy of any forward looking statement, whether as a result of changes in underlying factors, to reflect new information, as a result of the occurrence of events or developments or otherwise.*



*Financial Services Division*

*This document is dated as of March 6, 2006*

Advocate Health Care Network and Subsidiaries
Management Discussion and Analysis of Financial Condition and Results of Operations (Continued)

activities.   These activities are wide-ranging and include providing health education, immunizations for children, support groups, health screening, health fairs, pastoral care, home-delivered meals, transportation services, seminars and speakers, crisis lines, publishing health magazines, medical residency and internships, research and language assistance, and other subsidized health services.   These activities are provided free of charge or at a fee that is below the cost of providing them.   The cost of providing these other community benefits totaled $61,967 in 2004. The cost of these activities and the costs of uncompensated care for the year ended December 31, 2005 will be compiled, updated and included in a community benefit report that will be filed with the Office of the Attorney General for the State of Illinois in June 2006.   The State of Illinois' Community Benefits Act requires all Illinois hospitals, except for government owned, for-profit, and those outside a metropolitan statistical area or those with 100 beds or less to file a copy of their mission statement, a community benefit plan, an annual community benefits report and audited financial statements with the Illinois Attorney General's office.   The community benefit plan, amongst other items, must identify the goals and objectives of the organization for providing charity and government-sponsored indigent health care, identify the population and communities served and disclose health care needs identified by the hospital.

Advocate makes operating and financial decisions on a System-wide basis and provides for complete financial integration of the System hospitals.   Further, overall management of the System is centralized which allows for a streamlined decision making process and the ability of the System to respond quickly to market forces.   In addition, among Chicagoland hospitals and health care systems, the System believes it has the greatest geographic coverage with over 200 sites of care throughout the Chicago metropolitan area. The System has more than 5,000 physicians on the medical staffs of its hospitals.

**Employees**

With more than 24,900 employees (approximately 20,000 full-time equivalents), Advocate is the second largest private employer in the Chicago metropolitan area (Crain's Chicago Business, October 4, 2004). Management believes that the salary levels and benefit packages for its employees are competitive.   Also, management believes that the managers of the System generally have good relationships with their employees. Less than one percent (1%) of employees are represented by collective bargaining units.

In January 2003 the Service Employees International Union ("SEIU") approached Advocate about developing a partnership proposal.   The SEIU is the largest health care union in the U.S. with more than 1.5 million members.   The SEIU represents health care employees on the east and west coasts, but has not established a strong presence in the Midwest. During the course of meeting with the SEIU, it became apparent that the union was interested in organizing Advocate employees.   The SEIU asked Advocate management to sign a neutrality agreement, which would have provided many things for the union, including access to employees at work and at home; the elimination of a secret ballot vote; and a ban on management discussing union related issues. Since Advocate's refusal in April 2003 to sign the neutrality agreement, the SEIU has launched a corporate campaign against the System. This campaign is designed to undermine the credibility and integrity of Advocate by characterizing overall health industry challenges such as pricing, billing and collection and uninsured and underinsured patients as Advocate-only issues.   Additionally, traditional "grass-roots" organizing tactics, including demonstrations and protests, have occurred at several Advocate sites and the homes of associates. Management cannot predict with any certainty whether or not the activities of the SEIU will have any material adverse effect on the financial condition of the System.

In August of 2005, representatives of the National Nurses Organizing Committee ("NNOC"), a collective bargaining organization launched by the California Nurses Association ("CNA"), began passing out

*This document is dated as of March 6, 2006*

# Exhibit 8

# MILLER SHAKMAN & BEEM LLP

ATTORNEYS AND COUNSELORS

180 NORTH LASALLE STREET

SUITE 3600

CHICAGO, ILLINOIS 60601

TELEPHONE (312) 263-3700

FAX (312) 263-3270

February 2, 2007

WRITER'S DIRECT LINE

(312) 759-7213

By E-Mail & U.S. Mail

Robert M. Weinberg
Andrew Roth
Matthew Clash-Drexler
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth Street, NW
Washington, DC 20005

Re:    *Reed, et al., v. Advocate Health Care, et al.*, No. 06 C 3337
       *Schultz, et al. v. Evanston Northwestern Healthcare, et al.*, No. 06 C 3569

Dear Sirs:

I write on behalf of the defendants in the above-captioned Lawsuit regarding the objections of the SEIU and SEIU Local 20, as set forth in your letters of January 12 and 18, 2007, to the document subpoenas served upon SEIU in December. We request a conference under N.D. Ill. Local Rule 37.2 at your earliest convenience to discuss the objections and to attempt to narrow the scope of any disputes that we may need to bring to Judge Grady to resolve. Below are our principal points of disagreement with your objections, and, in some instances, some suggested compromises. The following list is not exhaustive. We reserve the right to raise other issues in the LR 37.2 conference.

1.     *Confidentiality*. SEIU raises several purported confidentiality objections. A debate over whether those objections have merit is unnecessary. Enclosed is a copy of the protective order entered in the case, which applies to production by third-parties, including SEIU. As you'll see, it sets forth several tiers of confidentiality, including a Highly Confidential attorney-eye only tier, which address the putative confidentiality concerns of any party or non-party responding to discovery. Alleged confidentiality is not a basis to object to production. Rather, such documents should be marked confidential pursuant to the protective order and produced forthwith. The protective order also addresses fully SEIU's incorrect assertion that "[t]he apparent design of these requests is to obtain the SEIU's confidential and proprietary documents for use in matters wholly collateral to the pending Lawsuit by entities whose interests are adverse or potentially adverse to those of the SEIU, and in the process to impose an undue burden on the SEIU." The requests are intended *solely* for the defense of this Lawsuit, for which SEIU conducted and funded investigations

MILLER SHAKMAN & BEEM LLP

Messrs. Weinberg, Roth & Clash-Drexler
February 2, 2007
Page 2

and which it is funding in part. Defendants do not seek documents for any other purposes, and any documents marked as confidential pursuant to the protective order cannot and will not be used for any purpose other than the Lawsuit.

Although the protective order resolves the issue, we note that the case law cited at page 5 of your January 12 letter in support of your confidentiality objections is inapt. In each of the three cases, one party was attempting to get collective bargaining strategy materials (notes, drafts, etc.) from the other party. In each case, the Board or Court ruled that information was protected in order to allow parties the freedom to develop bargaining strategy, etc., without concern for the other party seeing the documents. In each instance, the Board or Court also focused on the "quasi-fiduciary" relationship between a union and its members, which excused its production of documents regarding strategy related to the representation of the interests of those members. In contrast, the hospitals are not seeking bargaining strategy or notes, but rather, *inter alia*, corporate campaign documents that relate to this lawsuit. Also, SEIU does not already represent putative class members at the hospitals, so there is no concern for breaching a quasi-fiduciary relationship. We are aware of no case holding that such documents are entitled to protection or barring their production subject to a protective order.

2.     *Scope/Relevance/Burden*. SEIU's various relevance objections are misplaced. The fact that SEIU is not a party to the Lawsuit is, of course, irrelevant to what is discoverable under the Federal Rules. In any event, SEIU is no ordinary non-party. As SEIU admits, it conducted and funded factual investigations that led to the filing of this Lawsuit and suits in other jurisdictions, it is funding at least one of the law firms representing the plaintiffs, and it was involved in procuring at least some of the named plaintiffs in the cases. Mary Joyce Carlson's declaration in this case affirmed that "SEIU played a critical role in the genesis of the nurse wage antitrust lawsuits." Carlson Decl. ¶12. That SEIU is purporting to assert work product objections also confirms that it has a strong interest and involvement in this case and stands as no ordinary "non-party."

SEIU's posture as an ideologically and financially interested non-party also rebuts its attempt to use its "non-party" status to bolster its "undue burden" allegations. SEIU chose to develop allegations and support the prosecution of this case, which makes very serious charges against the defendant hospitals and implicates thousands of registered nurses. SEIU and the counsel it has allied with, not the defendants, defined the scope of this case. SEIU decided to foment a big, fact-intensive lawsuit, and cannot complain when parties to that lawsuit want to discover SEIU's evidence, regardless of how much evidence there might be.

Returning to the relevance objections, SEIU has very narrowly defined for itself those items it deems to be "relevant" and that warrant production. See 1/12/07 Letter at 2. This self-serving attempt to rewrite the requests to its liking is inappropriate. By way of example, SEIU is improperly

MILLER SHAKMAN & BEEM LLP

Messrs. Weinberg, Roth & Clash-Drexler
February 2, 2007
Page 3

excluding the following requests, which are plainly relevant to merits or class certification issues in the Lawsuit:

Request 1(iii): ("[a]ll documents discussing, referring to, concerning, or describing . . . (iii) the Lawsuit");

Request 11:    All documents consisting of, discussing, referring to, concerning, describing or evidencing any contract or agreements (including drafts or proposed contracts or agreements) between or among or including SEIU and any of the Named Plaintiffs in the Lawsuit.

Request 15:    All documents consisting of, discussing, referring to, concerning, describing or evidencing (i) the Lawsuit **and** (ii) any plan, proposal or action to organize the employees of any of the Hospital Defendants and/or obtain certification of SEIU as collective bargaining representative of any unit of any such Defendant's employees. [Emphasis added.]

Request 17:    All press releases, draft press releases and documents relating thereto, created or distributed by SEIU discussing, referring to, concerning or describing any of the Named Plaintiffs, any of the Hospital Defendants, or the Lawsuit.

Request 18:    All documents consisting of, discussing, referring to, concerning, describing or evidencing the allegations in the Complaint that any of the Hospital Defendants engaged in communications, exchanges of information or agreements with each other concerning wages of nurses, or otherwise engaged in conduct implicating the Sherman Act.

Request 19:    All documents consisting of, discussing, referring to, concerning, describing or evidencing research, studies or reports prepared or funded in whole or in part by SEIU regarding compensation paid to nurses or a nursing shortage, including, without limitation, the study titled "Solving the Nursing Shortage Through Higher Wages," purportedly issued by the Institute for Women's Policy Research.[1]

---

[1]    SEIU appears to have produced some documents responsive to this request. However, SEIU's objections appear to include this request and request 20.  Thus, it appears SEIU is objecting to producing all documents responsive to such requests.

MILLER SHAKMAN & BEEM LLP

Messrs. Weinberg, Roth & Clash-Drexler
February 2, 2007
Page 4

Request 20:   All documents consisting of, discussing, referring to, concerning, describing or evidencing communications (written, oral or electronic) with the Institute for Women's Policy Research, Vicky Lovell, Ph,.D. or Heidi Hartman.

Request 26:   All documents consisting of, discussing, referring to, concerning, describing or evidencing statements by Daniel Small, reported in the press, that the SEIU had been "forerunners in this litigation" and had poured "tremendous resources (into) looking at this issue from a number of perspectives."

Relevance is not a valid objection to these requests, and responsive documents should be produced forthwith. This includes Local 20's response, set forth in your letter of January 18, 2007: "Local 20 has not located any documents that are relevant to the issues in the lawsuit." Local 20 appears to be resting on the SEIU's overly narrow and incorrect definition of relevance, and refusing to produce documents that are both responsive and relevant. It should produce all such documents forthwith.

3.    *Breadth.*  There are several other requests to which SEIU appears to have objected as overly broad and, thus, unduly burdensome. SEIU's objection is that certain requests may go beyond the legal and factual issues in the Lawsuit, such as documents related to its corporate campaign against Advocate. Listed below are several of these requests, with suggested narrowing constructions that render each one indisputably relevant and of proper breadth. SEIU should have produced, and should now produce forthwith, all documents responsive to these requests as narrowed. (By offering such narrowed requests, defendants do not waive their rights to the documents originally requested, including those discussed later in this letter.) The narrowing language is set forth below in italics.

Request 1(ii):   All documents discussing, referring to, concerning, or describing any of . . . the Hospital Defendants *and that relate to the Named Plaintiffs, the Lawsuit, or the claims asserted therein, including, without limitation, claims regarding compensation for registered nurses employed in or living in the Chicago area.*

Request 2:    All documents discussing, referring to, concerning or describing any of the persons listed in Section A of Plaintiffs' Initial Disclosures dated September 20, 2006 (attached as Appendix 1) or Section A of Plaintiffs' Supplemental Initial Disclosures dated October 4, 2006 (attached as Appendix 2), including, but not limited to, all interview notes or memoranda, witness statements, and affidavits, whether in

MILLER SHAKMAN & BEEM LLP

Messrs. Weinberg, Roth & Clash-Drexler
February 2, 2007
Page 5

draft or final form, of any such persons, *where such documents relate to the Named Plaintiffs or putative class members, the Lawsuit, or the claims asserted therein, including, without limitation, claims regarding compensation for registered nurses employed in or living in the Chicago area.*

Request 3:    All documents consisting of, discussing, referring to, concerning, describing or evidencing communications (written, oral or electronic) between or among or including SEIU and any of the persons listed in Named Plaintiffs' disclosures described in the preceding request, *where such documents relate to the Named Plaintiffs, the Lawsuit, or the claims asserted therein, including, without limitation, claims regarding compensation for registered nurses employed in or living in the Chicago area.*

Request 4:    All documents consisting of, discussing, referring to, concerning, describing or evidencing communications (written, oral or electronic) between or among or including SEIU and counsel for the Named Plaintiffs, or any partner, agent or employee of such counsel . . . , *where such documents relate to the Named Plaintiffs, the Lawsuit, or the claims asserted therein, including, without limitation, claims regarding compensation for registered nurses employed in or living in the Chicago area.*

Request 5:    All documents consisting of, discussing, referring to, concerning, describing or evidencing communications (written, oral or electronic) between or among any SEIU officials, employees, agents, consultants, committees, affiliates or ad hoc working groups, including but not limited to Andrew Stern, Mary Kay Henry, Judith Scott, Mary Joyce Carlson, Tom Balanoff, James Geevarghese, Byron Hobbs, Cynthia Singer-Glasson *where such documents relate to the Named Plaintiffs, the Lawsuit, or the claims asserted therein, including, without limitation, claims regarding compensation for registered nurses employed in or living in the Chicago area.*

Request 6:    All documents consisting of, discussing, referring to, concerning, describing or evidencing contracts or agreements (including drafts or proposed contracts or agreements) between or among SEIU and any counsel for the Named Plaintiffs, or any partner, agent, or employee

MILLER SHAKMAN & BEEM LLP

Messrs. Weinberg, Roth & Clash-Drexler
February 2, 2007
Page 6

of such counsel *where such documents relate to the Named Plaintiffs, the Lawsuit, or the claims asserted therein, including, without limitation, claims regarding compensation for registered nurses employed in or living in the Chicago area.*

Request 10:    All documents consisting of discussing, referring to, concerning, describing or evidencing communications (written, oral or electronic) between or among or including SEIU and any member of the putative classes in the Lawsuit *where such documents relate to the Named Plaintiffs, the Lawsuit, or compensation for registered nurses employed in or living in the Chicago area.*

Request 13:    All documents consisting of, discussing, referring to, concerning, describing or evidencing communications (written, oral or electronic) between SEIU and any hospital alleged in the Complaints in the Lawsuit to be co-conspirators with the Hospital Defendants *where such documents relate to the Named Plaintiffs, the Lawsuit, or the claims asserted therein, including, without limitation, claims regarding compensation for registered nurses employed in or living in the Chicago area.*

Request 14:    All documents consisting of, discussing, referring to, concerning, describing or evidencing communications between or including SEIU and any person or entity, other than those referred to in Requests 1-13 above, including without limitation ACORN or Madeline Talbott, *where such documents relate to the Named Plaintiffs, the Lawsuit, or the claims asserted therein, including, without limitation, claims regarding compensation for registered nurses employed in or living in the Chicago area.*

Request 21:    All documents consisting of, discussing, referring, concerning, describing or evidencing communications (written, oral or electronic) or agreements (including drafts or proposed agreements) with Michael Reese Hospital or Doctor's Community Health Care Corporation *where such documents relate to the Named Plaintiffs, the Lawsuit, or the claims asserted therein, including, without limitation, claims regarding compensation for registered nurses employed in or living in the Chicago area.*

MILLER SHAKMAN & BEEM LLP

Messrs. Weinberg, Roth & Clash-Drexler
February 2, 2007
Page 7

> Request 22:   All documents consisting of, discussing, referring, concerning,
> describing or evidencing communications (written, oral or electronic)
> or agreements (including drafts or proposed agreements) between
> SEIU and the Mintz Group *where such documents relate to the
> Named Plaintiffs, the Lawsuit, or the claims asserted therein,
> including, without limitation, claims regarding compensation for
> registered nurses employed in or living in the Chicago area.*

    4.    *Attorney-Client Privilege and Work Product.*  Before addressing the substance of SEIU's privilege objections, it is incumbent upon SEIU to produce a privilege log if it continues to assert such objections.  SEIU should do so forthwith if and to the extent it does not withdraw such objections and produce responsive documents.

    SEIU states that "one or more of the Counsel of Record for a named plaintiff have an attorney-client relationship with the SEIU," and on that basis it objects to producing documents "concerning or referring to any assistance or information that the SEIU offered or provided to . . . any Counsel of Record for any Named Plaintiff."  1/12/07 Letter at 4.  This objection fails in several respects.  First, it does not apply to such Counsel with whom SEIU has no attorney-client relationship, which we have been informed is all counsel other than James & Hoffman.  Second, "information" provided to Counsel is not privileged.  For example, if SEIU provided non-privileged documents to Counsel, the documents remain unprivileged and must be produced.  Only information contained within a communication might be privileged, if all of the elements of the privilege are met, which can only be determined after production of a privilege log.

    SEIU also "objects to the request to the extent that it seeks documents for the period before the time that Counsel of Record and any named plaintiff entered into an attorney-client relationship.  Documents from that time period are subject to the attorney-client privilege."  This objection is frivolous by definition.  If no attorney-client relationship had formed, there can be no privilege, and SEIU is not even a party to the later-privileged relationship in any event.

    Finally, SEIU improperly asserts a work product objection to producing documents "that are part of the investigation undertaken by or at the direction of counsel for the plaintiffs."  SEIU also states that counsel for the named plaintiffs will object on that basis as well.  No such objection has yet been made, and it would be meritless.  As a non-party to this suit, SEIU cannot assert a work-product objection.  See, e.g., Evans v. City of Chicago, 231 F.R.D. 302, 310-11 (N.D. Ill. 2005).  Thus, all of its investigative activity, including such activity conducted on its behalf by James & Hoffman (at least before an attorney-client relationship was formed between that firm and any named plaintiff), is clearly discoverable.  For example, paragraphs 13 and 14 of the Carlson declaration refer to communications with Barbara Bergman and investigation performed by James & Hoffman that

MILLER SHAKMAN & BEEM LLP

Messrs. Weinberg, Roth & Clash-Drexler
February 2, 2007
Page 8

predate SEIU's consultations with other plaintiffs' counsel and its referral of potential nurse-plaintiffs to such law firms. Also clearly discoverable are the documents relating to the Mintz Group's investigations that concern this Lawsuit, since that group was retained by SEIU. No work product objection can apply to such documents.

     5.    *Corporate Campaign Documents.* Contrary to the 1/12/07 letter at 3-4, SEIU's corporate campaign activities do bear on "issue[s] presented by this Lawsuit," especially the question of the adequacy of at least some of the Named Plaintiffs, such as Lisa Reed, to serve as potential class representatives. Additionally, to the extent the SEIU is supporting this litigation as a corporate campaign tool, ethical issues arise concerning counsel who simultaneously represent named plaintiffs and the SEIU, and credibility issues arise concerning any investigator or expert who performed any services on behalf of SEIU. Request 15 is already clearly proper, since it seeks documents that relate to the Lawsuit **and** any corporate campaign: "All documents consisting of, discussing, referring to, concerning, describing or evidencing (i) the Lawsuit **and** (ii) any plan, proposal or action to organize the employees of any of the Hospital Defendants and/or obtain certification of SEIU as collective bargaining representative of any unit of any such Defendant's employees." (Emphasis added.) Subject to and without waiving their right to seek the full scope of documents requested, defendants propose the following narrowed requests, which SEIU should comply with forthwith:

Request 23:    All documents consisting of, discussing, referring to, concerning, describing or evidencing SEIU's request that any of the Hospital Defendants enter into a "neutrality" or "cooperation" agreement with SEIU or any other union *where such documents relate to the Named Plaintiffs, the Lawsuit, or the claims asserted therein, including, without limitation, claims regarding compensation for registered nurses employed in or living in the Chicago area.*

Request 24:    All documents discussing, referring to, concerning, describing or evidencing the SEIU's corporate campaign against any Hospital Defendant *where such documents relate to the Named Plaintiffs, the Lawsuit, or the claims asserted therein, including, without limitation, claims regarding compensation for registered nurses employed in or living in the Chicago area.* "Corporate campaign" here means any direct or indirect attempt (including through publications, demonstrations, litigation or otherwise) by a union or labor organization or its allies or supporters to persuade or influence an employer to yield to the union or organization's requests to enter into a neutrality agreement, to recognize the union or organization as a

MILLER SHAKMAN & BEEM LLP

Messrs. Weinberg, Roth & Clash-Drexler
February 2, 2007
Page 9

> bargaining representative, to enter into labor negotiations or a
> collective bargaining agreement, or otherwise agree to a demand.

Request 25:   All documents discussing, referring to, concerning, describing or
evidencing how to run a "corporate campaign" of the type referred to
in the preceding Request, such as manuals, guidelines, procedures,
strategies, etc., including, without limitation, the use of litigation as
a tool in a corporate campaign *where such documents relate to the
Named Plaintiffs, the Lawsuit, or the claims asserted therein,
including, without limitation, claims regarding compensation for
registered nurses employed in or living in the Chicago area.*.

Please advise promptly when you are available for a telephone conference to discuss the
foregoing.

Sincerely,

Edward W. Feldman

EWF/co

cc:    Counsel of Record