UNITED STATES DISTRICT COURT
OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

_____

Oakwood Healthcare Inc.,                          :
                                                  :
            Petitioner,                           :
                                                  :
    vs.                                           :    Case No. 1:07-mc-00458 (HKK) (AK)
                                                  :
Service Employees International Union,            :
                                                  :
            Respondent.                           :
                                                  :
_____

**OAKWOOD HEALTHCARE, INC.'S REPLY TO
SEIU'S OPPOSITION TO MOTION FOR ORDER COMPELLING
PRODUCTION OF DOCUMENTS IN COMPLIANCE WITH RULE 45 SUBPOENA**

I.    INTRODUCTION

        The Service Employees International Union ("SEIU") opposes Oakwood's Motion to

Compel not on burden, but solely on relevance.  It admits that discovery into the SEIU's possible

misuse of the class action device as a cudgel to bludgeon Oakwood or its co-defendants into

accepting neutrality and card check agreements, and thereby lower the barriers to unionization, is

relevant on class certification in the Detroit action.  *See* Mem. By the Service Employees Int'l

Union in Opp. to Mot. to Compel ("SEIU Opp.") at 9-10.  Yet, it denies that evidence of such

misuse in the other four pending nurse wage antitrust class actions or in any other SEIU

subsidized class action is relevant to class certification in the Detroit action.  *Id.*

        Essentially, the SEIU contends that its motivation for subsidizing other, multiple class

actions should be off limits to the Defendants in the Detroit action and that it has produced all of

the documents necessary for class certification purposes in that action in its response to the subpoena issued by St. John, Oakwood's co-defendant.

Oakwood submits that by choosing to subsidize and instigate multiple class action suits on behalf of non-union members, and given the broad scope of its pre-litigation investigation,[1] the SEIU has opened the door to reasonable discovery into whether the class action device is being misused for purposes other than those alleged in the Complaint in the Detroit action. Oakwood contends the greater the number of SEIU subsidized class actions--ostensibly, on behalf of non-union members, the more likely it is that these suits are being instigated primarily for the SEIU's purposes, and not for those of all class members.  Indeed, it is the number of SEIU subsidized class actions—known and unknown—that makes Oakwood's discovery particularly relevant.

Courts have recognized the burden of defending even non-meritorious class actions, which makes them a potentially potent weapon for the SEIU's purposes here:

> Many class actions are brought in this District, but few are tried to judgment.  The risk of defending a class action are so great, and the damages are so multiplied, that experience has shown even those substantially lacking in merit tend to be settled along the way.

*Norman v. ARCS Equity Corp.,* 727 F.R.D. 502, 506 (S.D.N.Y. 1976) (certification denied in securities class action because of finding that representative party would not fairly and adequately represent class based on totality of circumstances, including concerns about maintenance and champerty).  The class action device is subject to misuse and discovery into

---

[1] The SEIU's pre-litigation support for the five pending nurse wage antitrust class actions included a survey of 9,000 nurses in 24 U.S. markets.  *See* Exhibit 8, attached to Oakwood's Memorandum in Support of its Motion to Compel, Memorandum from Diane Feldman and Ruth Steinmetz, The Feldman Group, Inc., to Mike Kapsa and Elizabeth Buchannan (October 21, 2005); SEIU-DET 03936-44.  The five pending nurse wage antitrust class actions may be a precursor to a second and third wave of such SEIU subsidized class actions.

possible misuse is necessary to appraise adequacy of representation. *Chateau de Ville Productions, Inc. v. Tams-Witmark Music Library, Inc.*, 586 F.2d 962, 966 (2d Cir. 1978) (class certification reversed due to failure to permit discovery into allegations that named plaintiffs had used the class action for personal purposes because such evidence would be "highly relevant" to question of adequacy of named plaintiffs as class representatives).

After the Detroit action was filed, Plaintiffs' counsel was quoted in the press estimating the single damages to be $340 million.[2]  While theoretically a "non-party", the SEIU is responsible for these eight non-profit Southeastern Michigan hospital systems defending an action allegedly with a treble damage exposure of more than $1.3 billion.[3]  Given the SEIU's role in fomenting this litigation, Oakwood and its co-defendants should be entitled to reasonable discovery on the full extent of SEIU subsidization of class actions to unearth all possible conflicts and test the adequacy of the named Plaintiffs to serve as class representatives in the Detroit action.

II.    ARGUMENT

    A.  Where The Court Making The Relevancy Determination Has Jurisdiction
        Only Over The Discovery Dispute, Doubts Regarding The Relevance
        Of The Requested Information Should Be Resolved In Favor Of Permissive Discovery

Generally speaking, relevance for discovery purposes is broadly construed.  *Jewish War Veterans of the U.S. of America, Inc. v. Gates*, 506 F. Supp. 2d 30, 41-42 (D.D.C. 2007) (holding subpoenaed documents in the possession of three Congressmen were relevant to claim that federal statute designating city's veterans memorial as a national memorial violated the Establishment Clause resulting in partial grant of motion to compel.); *see also Oppenheimer*

---

[2] *See* Exhibit 1, Patricia Anstett, *Lawsuit:  Six Hospitals Limited Nursing Wages*, *Detroit Free Press*, Dec. 19, 2006 (SEIU-DET 04681-82).  Two additional hospital systems, Beaumont and Trinity, have since been added as Defendants.

[3] *Id.*

*Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1970) (observing that the term relevance "has been construed broadly to encompass any matter that bears on, or that could reasonably lead to other matter that could bear on, any issue that is, or may be, in the case.").

Once the party moving to compel production bears the initial burden of explaining how the requested information is relevant, the burden shifts to the objecting party to explain why discovery should not be permitted. *Jewish War Veterans*, 506 F. Supp 2d. at 42. Moreover, the general policy favoring broad discovery is particularly applicable where, as here, the court making the relevance determination has jurisdiction only over the discovery dispute, and hence less familiarity with the intricacies of the governing substantive law than does the court overseeing the underlying litigation. *Id.*; *Flannagan v. Wyndham Int'l., Inc.*, 231 F.R.D. 98, 103 (D.D.C. 2005). In such situations, doubts regarding the relevance of requested information should be resolved in favor of permissive discovery. *Jewish War Veterans*, 506 F. Supp. 2d. at 42; *Flannagan,* 231 F.R.D. at 103.

Consequently, doubts on the relevance of the information requested in the Subpoena should be resolved in Oakwood's favor.

B. Evidence That SEIU Class Actions Are Fueled By Ulterior Motives
Unrelated To Claims Alleged In The Complaints May Prevent
<u>Class Certification In The Detroit Action, And, Thus Is Relevant</u>

Contrary to the SEIU's assertions, the law is clear that evidence of an ulterior motive is relevant to adequacy of representation and, thus, class certification. In *Martinez v. Barasch*, No. 01-2289, 2004 WL 1367445 (S.D.N.Y. June 16, 2004), the court quoted *Kamean v. Local 363*, 109 F.R.D. 391, 395 (S.D.N.Y 1986), *appeal dismissed*, 833 F.2d 1002 (2nd Cir. 1986), *cert. denied*, 481 U.S. 1024 (1987), in holding that to satisfy that the adequacy of representation requirement:

> [T]he named plaintiffs must demonstrate that neither they nor their attorneys are subject to extraneous influences that would create a conflict. Sources of potential conflict are not confined to pecuniary interests. Lawsuits fueled by the spite or hostility of an unduly antagonistic litigant or by *some other ulterior motive* or irrational purposes unrelated to the claims alleged in the complaint may prevent class certification.

*Id*. at *4 (emphasis added); *see also Norman*, 727 F.R.D. at 506.

> 1. The SEIU's Motivation In Subsidizing Multiple Class Actions On Behalf Of Non-Union Members Should Be Subject It To Reasonable Discovery

Oakwood seeks evidence establishing that the SEIU's sponsorship of class action lawsuits on behalf of non-members is a misuse of the class action device to compel organizational targets to waive their right to an NLRB-supervised, secret ballot election. Evidence of a linkage, for example, between the Advocate Health Care Network's (hereinafter "Advocate") refusal to acquiesce in the SEIU's demand for a neutrality agreement and its inclusion as a defendant in *Reed v. Advocate Health Care* would, in Oakwood's view, is relevant on the issue of class certification in the Detroit action and, perhaps, in all of the pending nurse wage antitrust class actions.[4] Absent enforcement of the Subpoena, Oakwood will not have access to the documents the SEIU has produced relating to its organizational campaign against Advocate because the union has designated these documents "Confidential" or "Highly Confidential" pursuant to the Protective Order in the Chicago action. *See* Exhibit 2, Stipulation and Protective Order entered in *Reed v. Advocate Health Care et al.* at 8-9. Oakwood lacks access to SEIU documents pertaining to efforts and plans to obtain neutrality and card check

---

[4] The fact that Advocate's counsel issued a more limited subpoena than the Oakwood Subpoena is irrelevant. Defendants in different actions or even in the same action often make different tactical decisions regarding discovery. Advocate's counsel may have issued a more limited subpoena to avoid the necessity and attendant cost of seeking judicial intervention to resolve an anticipated discovery dispute.

agreements from other defendants in the pending nurse wage antitrust class actions for similar reasons.

Oakwood also seeks evidence of the total number of other SEIU subsidized class actions. Currently, Oakwood is only aware with certainty of the four other SEIU subsidized nurse wage antitrust class actions pending in Albany, Chicago, Memphis and San Antonio.  Although the SEIU initially objected to the Subpoena on grounds of burden as well as relevance, it has chosen to remain silent on the total number of class actions in which it has a funding relationship with any of the counsel for the named plaintiffs and abandoned the burden argument.  Suppose that since January 1, 2000, the SEIU has sponsored and subsidized ten or fifteen additional class actions based on other statutes on behalf of non-union members, all against employers from which it sought neutrality or card check agreements.  Wouldn't such evidence tend to show that the SEIU is misusing the class action device to send a message to organizational targets, a message that targets had better "partner" with the SEIU or find themselves defending costly and disruptive class action lawsuits?  The Federal Rules of Civil Procedure permit broad access to relevant information at the discovery stage.  Litigants "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1). Widespread subsidization of class actions brought on behalf of non-union members against defendants that include organizational targets may result in a finding that the SEIU is misusing the class action device and prevent class action certification.

2.    The SEIU Misstates Magistrate Judge David R. Homer's Holding On Defendants' Motion To Compel Compliance With Document Subpoenas Issued To The SEIU And SEIU Local 1199 In *Unger v. Albany Medical Center et al.*

At issue before Magistrate Judge Homer in the Albany action was defendant's motion to compel compliance, in effect, with two document subpoenas:  one issued by the U.S. District Court for the Northern District of New York to SEIU Local 1199 and a second subpoena issued

6

by the U.S. District Court for the District of Columbia to the SEIU.  *See* Exhibit 3, Transcript at 9, *Unger v. Albany Med. Ctr.,* No. 06-cv-0765 (N.D.N.Y.) (Jan. 23, 2007).

Magistrate Judge Homer ruled he had no jurisdiction to enforce the subpoena issued to the SEIU by the U.S. District Court for the District of Columbia.  *Id.* at 7-8.

The Albany defendants argued that because SEIU Local 1199 and the SEIU worked together during the pre-complaint investigation and to recruit named plaintiffs, both entities should be treated as one for purposes of enforcing the SEIU Local 1199 subpoena.  Magistrate Judge Home declined to so hold.  *Id.* at 9-10.

Thereafter, Magistrate Judge Homer dealt with objections to the breadth of the SEIU Local 1199 subpoena.  In so doing, Magistrate Judge Homer held that discovery of "the Union's involvement with particular named putative class representatives is relevant."  *Id.* at 30.  When Defendants sought to extend such discovery to individuals who declined SEIU Local 1199's request to serve as named plaintiffs, he stated that such information was irrelevant.  *Id.* at 31.

In sum, Magistrate Judge Homer granted Defendant's motion to compel compliance with certain portions of the SEIU Local 1199 subpoena and declined to enforce other portions of the subpoena.

To attempt to read more into Magistrate Judge Homer's remarks during the give and take of oral argument, Oakwood submits, would be error.

III.   <u>CONCLUSION</u>

Defendant Oakwood respectfully requests that this Court enter an order requiring the SEIU to produce the documents requested in the Subpoena, as modified by its October 29, 2007 proposal.

Respectfully submitted,

Dated:  December 7, 2007                DYKEMA GOSSETT PLLC

By:     *Howard E. O'Leary Jr*

Howard E. O'Leary, Jr.
DC Bar No. 15664
Howard Iwrey
1300 I Street, NW, Suite 300
Washington, DC  20005
hiwrey@dykema.com
holeary@dykema.com
(202) 906-8601
***Attorneys For Defendant,***
**Oakwood Healthcare Inc.**

## CERTIFICATE OF SERVICE

I, William M. Jack, hereby certify that on this 7th day of December, 2007, I served a copy of Oakwood Healthcare, Inc's Reply To SEIU'S Opposition To Motion For Order Compelling Production Of Documents In Compliance With Rule 45 Subpoena and attached exhibits via electronic mail and first-class mail to counsel for Service Employees International Union, Matthew Clash-Drexler, Esq., Bredhoff & Kaiser, 805 Fifteenth Street, NW, Washington, D.C. 20005, and a copy of the foregoing via electronic mail on all counsel of record and by first-class mail on all Plaintiffs' counsel in *Merendo and Jeffrey A. Suhre v. Detroit Medical Center et al.*, No. 06-15601 (E.D. Mich.).

| **VIA ELECTRONIC AND U.S. MAIL** | |
|---|---|
| Stephen F. Wasinger<br>STEPHEN F. WASINGER PLC<br>26862 Woodward Avenue, Suite 100<br>Royal Oak, MI 48067-0958<br>*Email:* sfw@sfwlaw.com | Mark A. Griffin<br>Raymond J. Farrow<br>KELLER ROHRBACK<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101<br>*Email: mgriffin@kellerrohrback.com,<br>rfarrow@kellerrohrback.com* |
| Charles P. Tompkins<br>COHEN, MILSTEIN, HAUSFELD & TOLL,<br>P.L.L.C.<br>1100 New York Avenue, NW<br>West Tower, Suite 500<br>Washington, DC 20005<br>*Email: ctompkins@cmht.com* | David P. Dean<br>JAMES & HOFFMAN<br>1101 17th Street, NW, Suite 510<br>Washington, DC 20036<br>*Email: dpdean@jamhoff.com* |
| **VIA ELECTRONIC MAIL** | |
| Alethea A. Wilson<br>Charles N. Raimi<br>Patricia C. Schabath<br>DETROIT MEDICAL CENTER<br>3990 John R, 7 Brush W.<br>Detroit, MI 48201<br>*Email:* awilson4@dmc.org, craimi@dmc.org,<br>pschabat@dmc.org | Kenneth J. McIntyre<br>L. Pahl Zinn<br>DICKINSON WRIGHT PLLC<br>500 Woodward Avenue, Suite 4000<br>Detroit, MI 48226-3425<br>*Email:* kmcintyre@dickinsonwright.com,<br>pzinn@dickinsonwright.com |

| David Marx, Jr.<br>Benjamin J. Hanauer<br>David L. Hanselman, Jr.<br>Stephen Y. Wu<br>MCDERMOTT, WILL & EMERY<br>227 W. Monroe Street<br>Chicago, IL  60606<br>*Email:  dmarx@mwe.com,*<br>*bhanauer@mwe.com; dhanselman@mwe.com,*<br>*swu@mwe.com* | Mark S. Wilkinson<br>Terrence J. Miglio<br>Jonathon A. Rabin<br>KELLER THOMA<br>440 E. Congress, 5th Floor<br>Detroit, MI  48226-2918<br>*Email:  msw@kellerthoma.com,*<br>*tjm@kellerthoma.com, jar@kellerthoma.com* |
|---|---|
| David A. Ettinger<br>Peter E. Boivin<br>HONIGMAN MILLER SCHWARTZ AND COHN LLP<br>660 Woodward Avenue, Suite 2290<br>Detroit, MI  48226-3506<br>*Email:  dettinger@honigman.com,*<br>*pboivin@honigman.com* | Michael J. Bommarito<br>MCLAREN HEALTH CARE<br>G3235 Beecher Road, Suite C<br>Flint, MI  48532-3615<br>*Email:  michaelb@mclaren.org* |
| Phillip A. Proger<br>Toby G. Singer<br>Michael R. Shumaker<br>JONES DAY<br>51 Louisiana Avenue, NW<br>Washington, DC  20001-2113<br>*Email:  paproger@jonesday.com,*<br>*tgsinger@jonesday.com,*<br>*mrshumaker@jonesday.com* | Thomas M.J. Hathaway<br>CLARK HILL P.L.C.<br>500 Woodward Avenue, Suite 3500<br>Detroit, MI  48226<br>Telephone:  (313) 965-8300<br>Facsimile: (313) 965-8252<br>*Email:  thathaway@clarkhill.com* |
| Arthur N. Lerner<br>Shari Ross Lahlou<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue, NW<br>Washington, DC  20004<br>*Email: alerner@crowell.com,*<br>*slahlou@crowell.com* | Fred K. Herrman<br>KERR, RUSSELL & WEBER, PLC<br>500 Woodward Avenue, Suite 2500<br>Detroit, MI  48226-3406<br>*Email: fkh@krwlaw.com* |

| | |
|---|---|
| Margo Weinstein<br>Sandra D. Hauser<br>SONNENSCHEIN NATH & ROSENTHAL LLP<br>1221 Avenue of the Americas<br>New York, NY  10020<br>*Email: mweinstein@sonnenschein.com,*<br>shauser@sonnenschein.com | David B. Gunsberg<br>322 N. Old Woodward Avenue, Suite 200<br>Birmingham, MI  48009<br>*Email: davidgunsberg@hotmail.com* |
| Christopher Q. King<br>SONNENSCHEIN NATH & ROSENTHAL LLP<br>7800 Sears Tower<br>233 South Wacker Drive<br>Chicago, IL  60606-6404<br>*Email: cking@sonnenschein.com* | Catherine F. Wenger<br>TRINITY HEALTH<br>27870 Cabot Drive<br>Novi, MI  48337<br>*Email:  wengerc@trinity-health.org* |
| Sheldon H. Klein<br>William D. Slowey<br>BUTZEL LONG<br>150 W. Jefferson, Suite 100<br>Detroit, MI  48226-4430<br>*Email:  klein@butzel.com,* slowey@butzel.com | |

_____s/ William M. Jack_____

DC01\128504.2
ID\HEO

# EXHIBIT 1

# Jamie Cohen

**From:**     Jamie Cohen
**Sent:**     12/19/2006 4:56:51 PM
**To:**       Dimitrios Philliou /O=SEIU/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=PHILLIOD;
**Cc:**
**Bcc:**
**Subject:**   FW: Free Press: Lawsuit: Six hospitals limited nursing wages

FYI

---

**From:** Jennifer Coate
**Sent:** Tuesday, December 19, 2006 4:50 PM
**To:** Patricia Yeghissian; Jamie Cohen
**Subject:** FW: Free Press: Lawsuit: Six hospitals limited nursing wages

---

**From:** Alexander Shulman
**Sent:** Tue 12/19/2006 4:38 PM
**To:** Rickman Jackson; margernseiu@yahoo.com
**Cc:** Robert Allison; Jennifer Coate
**Subject:** Free Press: Lawsuit: Six hospitals limited nursing wages

No SEIU mention. -Alex

Lawsuit: Six hospitals limited nursing wages

By PATRICIA ANSTETT
FREE PRESS MEDICAL WRITER

December 19, 2006

Six metro-Detroit hospital systems colluded to suppress nurse wages, contributing to nursing shortages and holding back nurses from pay hikes, a federal class lawsuit filed last week charges.

The lawsuit, filed Friday in Detroit's U.S. District Court, seeks an estimated $340 million dollars on behalf of 16,800 registered nurses working full-time from 2002 to the present at the six hospitals, according to Daniel Small, a partner with Cohen, Milstein, Hausfeld & Toll, a Washington D.C. law firm that filed the lawsuit with James & Hoffman, also of Washington D.C. On average, RNs were underpaid about $5,000 a year, Small said.

The health systems named in the lawsuit are the Henry Ford Health System and the Detroit Medical Center, both in Detroit; the McLaren Health Care Corp., in Flint and Mount Clemens; Oakwood Healthcare Inc., of Dearborn; Bon Secours/Cottage Health Services, Grosse Pointe, and St. John Health Partners, headquartered in Warren. None of the hospitals responded for comment Tuesday morning.

"We believe this is a significant factor in nursing shortages," Small said. Low wages contribute to factors for why nurses leave hospital jobs, he said.

Two plaintiffs are named in the lawsuits: Pat Cason-Merendo, who works at the DMC's Rehabilitation Institute of Michigan, in Detroit and Jeffrey Suhre, of the St. John system's Providence Hospital and Medical Center, Southfield.

The lawsuit claims that the hospitals unlawfully conspired to keep nurses wages at low levels by exchanging information about what they paid their nurses.

The effect of the information exchange was to keep nursing wages in metro Detroit at "low and surprisingly stagnant" but unspecified levels, the lawsuit said.

The law firm filed similar suits in June alleging conspiracies by Albany, Chicago, Memphis and San Antonio health systems. This is not the

SEIU-DET 04681

first lawsuit of its kind and may extend to other jobs in the health care industry, Small said.

Details about the suit are at the law firm's Web site, www.cmht.com, or by calling them at 202-408-4600.

SEIU-DET 04682

# EXHIBIT 2

*AmB*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LISA REED, et al., | ) | |
| | ) | |
| on behalf of themselves and all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | Civil Action No. 06 C 3337 |
| v. | ) | |
| | ) | Grady, J. |
| ADVOCATE HEALTH CARE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| JANET SCHULTZ, et al., | ) | |
| | ) | |
| on behalf of herself and all others | ) | |
| Similarly situated, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | Civil Action No. 06 C 3569 |
| v. | ) | |
| | ) | Grady, J. |
| EVANSTON NORTHWESTERN | ) | |
| HEALTHCARE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## STIPULATION AND PROTECTIVE ORDER GOVERNING
## THE PRODUCTION AND EXCHANGE OF CONFIDENTIAL INFORMATION

Whereas, the Plaintiffs and Defendants in the above-captioned action may seek

discovery or documents, information, or other materials that may contain non-public, confidential,

competitively-sensitive, or proprietary information of another party or of a third party;

The envelope shall not be opened without further order of the Court except by persons authorized

to have access to such materials pursuant to paragraphs 5, 6, and 7, as applicable, who shall return

the information to the Clerk in a sealed envelope.  Any envelope containing Confidential or Highly

Confidential Information filed under seal that is an exhibit to a pleading shall also bear the name of

the pleading.  A full and unredacted copy of any such submission shall be provided directly to

chambers, marked "Chambers Copy" and "Contains [Confidential Information] or [Highly

Confidential Information] or [Confidential Information—Not to be Disclosed to Union] or [Highly

Confidential Information—Not to be Disclosed to Union] Subject to Protective Order."

      b.     Within three (3) business days of filing Confidential Information or Highly

Confidential Information, pursuant to paragraph 3(a), the submitting party shall electronically file

with the Court, for its public file, a copy of the submitted materials with the Confidential

Information or Highly Confidential Information redacted.  Any Confidential or Highly

Confidential Information produced by third parties pursuant to this Order also shall be redacted

from this public electronic filing.

      c.     If any party objects to identified portions of the materials remaining under

seal, it shall state its objections in a faxed or electronically delivered letter to counsel for all parties

in this Litigation.  The interested parties shall promptly meet and confer to attempt to resolve those

objections and, if they cannot be resolved, shall promptly tender those objections to the Court for

resolution.  A revised public electronic filing, if any, of that submission shall be made by the

submitting party within six business days after the Court's decision resolving that dispute.

      4.     <u>Use of Confidential or Highly Confidential Information</u>

- 8 -

    a.      Confidential or Highly Confidential Information shall not be used by any person, other than the Producing Party, for any purpose other than conducting this Litigation, and in no event shall Confidential or Highly Confidential Information be used for any business, competitive, personal, private, public, organizational or other labor or employee relations purpose.

    b.      Notwithstanding the foregoing, nothing in this Order shall be deemed to limit or restrict any Producing Party from using its own documents or its own Confidential Information or Highly Confidential Information for any purpose. The Producing Party may withdraw or modify any designation.

    5.      <u>Disclosure of Confidential Information</u>

    Access to information designated as "CONFIDENTIAL" pursuant to this Order shall be limited to:

    a.      The Court or any other court exercising jurisdiction with respect to this Litigation, Court personnel, jurors, and qualified persons (including necessary clerical personnel), recording, taking or transcribing testimony and argument at any deposition, hearing, trial or appeal in this Litigation;

    b.      Special masters and mediators or other individuals engaged or consulted in settlement of the Litigation;

    c.      Outside counsel of record for the parties in this Litigation (including members or associates of such counsel's firm) or in-house counsel for the parties, as well as their paralegal, investigative, secretarial, and clerical personnel who are engaged in assisting such counsel in this Litigation;

- 9 -

**EXHIBIT 3**

```
 1              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF NEW YORK
 2   --------------------------------
 3   MARJORY UNGER, on behalf of        Docket No. 06-CV-00765-TJM-DRH
     herself and all others
 4   situated,                          Albany, New York
                                        January 23, 2007
 5                    Plaintiff,
 6              v.
 7   ALBANY MEDICAL CENTER et al,
 8                    Defendants.
     --------------------------------
 9         TRANSCRIPT OF STATUS/DISCOVERY CONFERENCE
          BEFORE MAGISTRATE-JUDGE DAVID R. HOMER
10              UNITED STATES DISTRICT JUDGE
11   A P P E A R A N C E S :
12   For the Plaintiff:    MICHAEL RHODES-DEVY, ESQ.
                           Of Counsel to Towne Law
13                         Office of Michael Rhodes-Devey
                           P.O. Box 15072, 7 Wembley Court
14                         Albany, New York 12212-5072
                           518-452-1800
15                         518-452-6435 fax
                           Email: DeveyLaw@aol.com
16
17   For the Plaintiff:    DANIEL A. SMALL, ESQ.
                           Cohen, Milstein Law Firm
18                         1100 New York Avenue, N.W.
                           West Tower, Suite 500
19                         Washington, DC 20005
                           202-408-4600
20                         202-408-4699 fax
                           Email: dsmall@cmht.com
21
     For the Plaintiff:    ALLYSON B. BAKER, ESQ.
22                         Cohen, Milstein Law Firm
                           1100 New York Avenue, N.W.
23                         West Tower, Suite 500
                           Washington, DC 20005
24                         202-408-4600
                           202-408-4699 fax
25                         Email: abaker@cmht.com
```

Marjory Unger v. Albany Medical Center et al                    7

 1    the best we can.  But that's the way it's going to end up.
 2            There are several issues that have been raised by the
 3    parties and non-parties in letters to the Court.  I would
 4    propose to take first the issues between -- I believe it's --
 5    Defendants Seton Health and the National and Local Union with
 6    respect to the subpoenas first and then address the disputes
 7    between the parties.  With respect to the Seton Health
 8    subpoenas, I'll hear from Seton Health first.
 9            MR. SHUMAKER:  Your Honor, Michael Shumaker --
10            THE COURT:  You're going to have to pull the
11    microphone as close as you can.
12            MR. SHUMAKER:  Michael Shumaker of Jones Day on behalf
13    of Seton Health.  Can you people hear me?
14            THE COURT:  Don't worry about them.
15            MR. SHUMAKER:  Your Honor, as I'm sure you saw from
16    the papers, Seton Health has served subpoenas duces tecum on the
17    SEIU.
18            THE COURT:  Let's start with the National.  How does
19    this Court have jurisdiction?
20            MR. SHUMAKER:  This Court has jurisdiction --
21            MR. WEINBERG:  Your Honor, I don't want to be rude but
22    I can't -- if anybody's speaking, I can't hear it.  It's Bob
23    Weinberg from the SEIU.
24            THE COURT:  Well, we're doing our best.
25            MR. WEINBERG:  Well, thank you.

Marjory Unger v. Albany Medical Center et al                    8

```
1          THE COURT:  Go ahead.

2          MR. SHUMAKER:  Your Honor, the subpoenas were issued

3     both out of this Court as well as from the District of Columbia.

4          THE COURT:  The one to the Local was issued out of

5     this Court?

6          MR. SHUMAKER:  Yes.

7          THE COURT:  The one for the National was issued out of

8     the District of Columbia.

9          MR. SHUMAKER:  Yes, Your Honor.

10         THE COURT:  That's the one I'm asking you about.

11         MR. SHUMAKER:  Okay.  The Court does not have

12    jurisdiction over the subpoena issued out of the DDC.

13         THE COURT:  All right.

14         MR. SHUMAKER:  There is no question about that.  What

15    the Court does have jurisdiction over is Local 1199.  And the

16    SEIU tends to use as a corporate formality to not comply with

17    its obligation under the federal rules.  The standard is --

18         THE COURT:  It's not often I hear defense counsel

19    talking about corporate formalities.

20         MR. SHUMAKER:  Understood, Your Honor.  But this is

21    the situation where the SEIU, both the National and the Local,

22    worked together to bring this case and to recruit Named

23    Plaintiffs.  The documentation is very clear on that.  It would

24    seem that if they're going to work together to bring this case,

25    they should be treated as one with respect to their obligations
```

Marjory Unger v. Albany Medical Center et al                    9

```
1    in responding to discovery.

2              There are a number of cases out there that what is

3    important is actual and constructive control over the documents.

4    They have the ability to control the documents and the ability

5    to share information and they worked together to bring this

6    case.  It would seem that fairness would dictate that they have

7    control over the documents relating this entire investigation

8    that led to this.

9              THE COURT:  But everything else about the two entities

10   suggests that they are separate; separate constitutions,

11   separate bylaws, separate offices, separate locations, separate

12   everything.

13             MR. SHUMAKER:  And I do not dispute that.  And there

14   are a number of cases, Your Honor, where people have made the

15   similar argument usually in a parent subsidiary context.  Once

16   the courts say that if the subsidiary and the parent work

17   together with respect to a transaction that is an issue in the

18   litigation, they will determine they have constructive notice

19   over the documents held by the parent.  We would submit that the

20   same situation applies here.

21             If Local 1199 worked with this entity to bring this

22   case, they should be treated as one with respect to this case.

23   At a minimum, this Court has jurisdiction over Local 1199.

24             THE COURT:  Well, let's start with the minimum then

25   because I'm not inclined to find a unity here where the Local
```

Marjory Unger v. Albany Medical Center et al          10

1   would be dictating what documents are produced by the National.

2   And you do have a remedy with respect to your subpoena to the

3   National.

4          MR. SHUMAKER:  Absolutely.  And we will follow through

5   with that.  We just felt that given that we had Your Honor's

6   attention here on the 23rd that we would bring the issue before

7   you.

8          THE COURT:  I understand.  Let's talk about the Local.

9          MR. SHUMAKER:  With respect to the Local, they have

10  raised a number of objections; over breadth, undue burden,

11  Section 7, Constitution.  When you cut through the hyperbole and

12  numerous objections, at the end of the day what we do have is

13  the Union admitting that they have "massive amount of material"

14  relating to nursing compensation and nursing recruiting.

15         THE COURT:  We're still focused on class certification

16  here, so this is not matched discovery.

17         MR. SHUMAKER:  I understand.  And what the discovery

18  seeks to get at is to what extent is the SEIU driving this case.

19  We have knowledge --

20         THE COURT:  Let's assume that they're driving it.

21         MR. SHUMAKER:  Okay.

22         THE COURT:  So what?

23         MR. SHUMAKER:  The fact that they are driving this

24  case suggests that the representative of this class is not a

25  proper representative.  If you look at the case law, there is

Marjory Unger v. Albany Medical Center et al                    30

1    the Complaint --

2              MR. SHUMAKER:  Okay.  And I --

3              THE COURT:  -- period.  That's going to pare down the

4    scope of you demand.

5              MR. SHUMAKER:  I understand that, and I believe that

6    the other information that's being sought with respect to the

7    Union's role in bringing this case.  Documents relating to what

8    is it we're going to do, how are we going to move on this to

9    develop this action, is relevant to --

10             THE COURT:  I understand your position.  We talked

11   about it before and in my view that the relevancy of the Union's

12   involvement in bringing this law suit class certification is

13   non-existent.  The relevancy with the Union's involvement with

14   particular named putative class representatives is relevant.  I

15   am told that that's already been disclosed, so I've moved onto

16   other issues.  I don't want to go back and revisit the other

17   ones.

18             MR. SHUMAKER:  The other issue that pops in my head,

19   Your Honor, is the identity of the other individual that they

20   contacted and potentially serviced as a class of

21   representatives.

22             THE COURT:  Who declined?

23             MR. SHUMAKER:  Yes, Your Honor.

24             THE COURT:  How is that relevant?

25             MR. SHUMAKER:  It would seem that that would suggest

Marjory Unger v. Albany Medical Center et al                    31

1   that their -- the fact that they decide who is or who is not an

2   adequate representative to be relevant to determine whether this

3   individual is in fact an adequate representative.

4           THE COURT:  Well, in my view, the only relevants are

5   the people who are actually named and you're entitled to

6   discovery regarding them.  Anybody who might have been wooed and

7   declined, who offered themselves and were rejected, it's

8   irrelevant at this point.

9           All right, so far I'm going to order two things -- oh,

10  one has already been produced; information regarding Ms. Unger,

11  and communications between the Local and Ms. Unger.  And the

12  second, I'm going to direct the Union to produce wage

13  information -- documents setting forth wage information for

14  nurses during the period alleged in the Complaint.  You don't

15  have to do it more than once, but you do have to produce

16  complete information regarding that.

17          MR. SHUMAKER:  Can I make one additional request, Your

18  Honor?

19          THE COURT:  Yes.

20          MR. SHUMAKER:  Documentation that would relate to

21  whether it's profitable -- whether it can be brought -- the

22  class action can be brought to the extent documents of that

23  (inaudible).  For example; if there's an internal discussion

24  among the SEIU individuals that we can bring a class action

25  (inaudible).  That was of particular relevance to whether they